## Spahr *versus* Farmers' Bank, Carlisle.

1. Where a charter has been granted to certain parties to act as a corporation, and they are actually in the possession and enjoyment of the corporate rights granted, such possession and enjoyment are valid against any one who deals with them in their corporate character, and he cannot be permitted, in a collateral proceeding, to prove that a condition precedent to its full corporate existence has not been complied with.

2. The Farmers' Bank was chartered in 1868, and did business under the provisions of the Free Banking Act of 1861. In 1871 its officers obtained a new charter by a special act of the legislature which conferred other corporate powers. When the act was passed, the bank ceased to do business under the old charter, and began to act under the new charter in the name of the "Farmers' Bank, Carlisle." The stock and assets of the old bank were treated as belonging to the new, and the business continued, with the old officers, without interruption. Renewal notes were taken for portions of notes which were unpaid during the existence of the old bank, and which had been discounted by the old bank at usurious rates, and new notes and renewals were also made by the new bank at usurious rates. In a suit by the new bank against the endorser of the series of notes and renewals, *Held*, that the defendant in said suit could not set up the validity of the change made by the corporation, or question its powers in this transaction.

94 429
159 307
94 429
193 234
94 429
26 SC 1487

May 13th 1880.    Before Mercur, Gordon, Paxson, Trunkey and Sterrett, JJ.    Sharswood, C. J., and Green, J., absent.

Error to the Court of Common Pleas of *Cumberland county:* Of May Term 1880, No. 71.

Assumpsit by the Farmers' Bank, Carlisle, against Peter Spahr, on certain promissory notes endorsed by defendant.

The case, by an agreement filed, was submitted to the court, Herman, P. J., for trial without a jury. The court found the facts substantially as follows :—

The plaintiff is a corporation, and was originally the "Farmers' Bank," which was organized and *incorporated by letters patent* issued by the governor under date of 28th October 1868, as a bank of discount, deposit and circulation, under the provisions of the Free Banking Act of 1st May 1861. Under its charter thus granted, it immediately went into operation in the borough of Carlisle, as a bank of discount and deposit, with a paid up capital stock of $50,000, divided into one thousand shares of the par value of $50 each, and continued to do business as such until 1st May 1871. On the 15th of March 1871, the persons who were then the directors, president and cashier of the "Farmers' Bank," obtained from the legislature the passage of a special act (Pamph. L. 366) by which they were created a corporation by the name of the "Farmers' Bank, Carlisle," with certain powers and restrictions which differed materially from those contained in the original charter.

At a meeting of the board of directors, a resolution was passed whereby the bank, on May 1st 1871, was to cease to act under the charter of 1868, and thenceforth act under the charter of

[Spahr *v.* Farmers' Bank.]

March 15th 1871. This change was assented to by the stockholders by an agreement in writing. After the 1st of May 1871, the bank, therefore, conducted its business under the provisions of the new charter and in the name of the "Farmers' Bank, Carlisle." A notice of this change was sent by the cashier to the auditor-general of the state.

No change of books was made, and the business was carried along without any interruption and in the same manner as before, except in the discounting of paper. Prior to the 1st May 1871, notes, on which a greater rate than six per cent. was taken, were made payable at some place other than the bank, and the excess was entered in the books as exchange and taken as such, but afterwards all notes were made payable at the bank, whether a greater than the legal rate was taken or not, and when a greater rate was received, it was taken and entered in the books as discount. The same dividend book continued to be used, the printed heading over each page of this book styled the bank as the "Farmers' Bank, of Carlisle," but after 1st May 1871, when the dividends were entered in it, the word " of " was stricken out, leaving the name stand as the "Farmers' Bank, Carlisle." The capital stock, as it existed under the old charter, was carried along as the stock of the bank under the new charter, and dividends were continuously and regularly declared and paid by the bank, and received by the stockholders. At the time of the acceptance of and change to the new charter, no new officers were elected. The same officers continued to serve under the new charter. The old directors continued to serve until the second Monday of November following, on which day an election for directors was held, and directors elected. Directors were regularly elected on the second Monday of November of every succeeding year, according to the provisions of the charter of 1871. The old cashier continued to serve as such under the new charter without any new election.

All the property and assets of the bank at the time of the change became and continued to be the property and assets of the bank under the new charter. Prior to the organization under the new charter, the bank had discounted certain notes and renewals at the rate of eight per cent., on which Spahr was accommodation endorser. After the reorganization, a portion of these notes were renewed at the same rate, and new notes and renewals were discounted at a like rate, the notes in suit being the last renewals in these various series. On all the bank charged and took a discount of eight per cent.

The defendant pleaded specially that there was no such corporation as the "Farmers' Bank, Carlisle;" that it never completed its organization, and was incapable of doing business as a corporation under the Act of March 15th 1871, inasmuch as it had failed to comply with the terms of the act; that the Farmers' Bank was

[Spahr v. Farmers' Bank.]

still in existence and subject to the provisions of the Act of 1861, and that it therefore had no right to discount said notes at a higher rate than six per cent. without incurring the forfeiture of the whole debt.

The plaintiff submitted a number of points, in substance as follows: That all the facts show an intent to abandon the old charter and act under the new, and that all acts done subsequent to the grant of the new charter are to be presumed to have been done in the exercise of the rights conferred thereby, that the change as effected, was practically and legally a determination of the first charter so far as the subsequent acts of the corporation were concerned under the new charter; that discounting notes was one of the rights secured to the plaintiff by the Act of 1871, and if usury was received the excess only could be set off; that the defendant being a debtor to the bank, cannot deny its legal existence and defend against the notes by any alleged irregularities or omissions in its organization; that the discount of the notes by plaintiff which originated in the Farmers' Bank was a novation founded on a sufficient consideration, and the plaintiff took them free from any taint of usury; that the acceptance and use of the new charter made it valid and binding on all parties dealing with the bank and unimpeachable, except, perhaps, by the Commonwealth or a corporator. All of these points the court affirmed.

The points of the defendant which the court refused were, in substance, as follows: That the Act of 1871 did not transform the Farmers' Bank into a new corporation; that there is no power conferred by said act to adopt the organization, stock and liabilities of an existing corporation; that there was not a bona fide organization by subscription to stock, payment of money therefor, payment of state tax, election of officers, &c; that there was no actual surrender of the old charter according to law; that the payment of $50,000 in money as capital was a condition precedent to doing business under the charter of 1871; that the corporation called the Farmers' Bank, Carlisle, has never had any legal existence; that the illegal interest having been taken on all the debts on which this suit is based, the plaintiff cannot recover anything in this action.

In an opinion filed, the court, inter alia, said: "These being the facts of the case, I am of the opinion that the 'Farmers' Bank, Carlisle,' is a corporation duly organized, doing business and having its legal existence under and by virtue of the charter of 15th March 1871, and that it is entitled to recover from Peter Spahr, the defendant, the amount of the notes in suit, after deducting the sum of $384.35, being the excess over the legal rate of interest taken and received by the bank, on all the different series of notes represented by the notes in suit, and also allowing a credit of $1000, paid on account of these notes by him on 17th January 1876. * * * I think it cannot be seriously doubted, that

the charter of 1871 was granted by the legislature, with the intention that it should be accepted and used by the 'Farmers' Bank,' in lieu of the old charter of 1868, and that the bank has practically done precisely what it was thus intended it should do. The corporators named in the charter of 1871, cannot complain of what was done, for they recommended it, neither can the stockholders complain for they assented to it. There are no creditors to complain, for all the liabilities of the bank incurred under the old charter have been fully discharged and paid. No person has been hurt or prejudiced by the change, certainly, not this defendant, for the bank's money was procured on the faith of his endorsements, and full value given therefor, excepting only in the taking and reserving the excess over the legal rate of interest, and for this he can and will now be fully compensated by deducting it from the amount of the notes in suit. And if the bank owes any duty to the state which it has failed to perform, this defendant cannot take any advantage of that, it will not relieve him of his duty to pay his debt to the bank.

" The bank having, since 1st May 1871, been a corporation existing and operating under the charter of 1871, and not under that of 1868, it has not since then been subject to the charter of 1868, and all the notes in suit having been given and discounted in the years 1874 and 1875, the taking and reserving of a greater than the legal rate of interest thereon, does not operate as a forfeiture of the debt represented by any of the notes. The decision of the court is in favor of plaintiff for $5587.40."

The exceptions filed to this decision were overruled by the court, and judgment entered for plaintiff. Defendant then took this writ, and alleged that the court erred in this entry of judgment, and in the answers to the points.

*S. Hepburn, Jr.*, and *S. Hepburn*, for plaintiff in error.—This is not an attempt, as the court below implies, to set up a defective organization as a defence to an honest debt. It was the bank which attempted to escape liability by setting up a pretended charter, and acts which were not only without legislative authority, but in the face of positive enactments, which direct how the organization shall be made, and prohibit doing any business until they are complied with. The defendant, as an endorser, had rights which were secured to him by the Act of 1868, and these rights cannot be destroyed by the substitution of one charter for another where the terms of the act under which the charter rights are claimed have not been complied with. The manner in which charters may be surrended, or corporations dissolved, is fixed by statute : Act of April 9th 1856, 1 Purd. Dig. 285, pl. 21 ; Commonwealth *v.* Slifer, 3 P. F. Smith 71; Brice's Ultra Viras 65 ; Potter on Corporations, sect. 703. If, by non-performance of a condition

of its charter, a corporation has forfeited any of its rights, the legal existence of the corporation may be questioned by any one affected: B., W. & N. Railway Co., 27 Sicles 245.

The Act of 1871, was not a recharter, supplement or amendment of any existing charter. The intention of the legislature as gathered from the act is clear and unequivocal. The intention of the corporation cannot affect its meaning. The act provides for a bank to be organized in the future. It directs that the capital stock of $100,000 shall be divided into two thousand shares of $50, which shall be paid in such instalments as the said bank shall by its by-laws direct. There was no bona fide organization under the new charter and it was invalidated: Sect. 1, art. 16, of the Constitution.

All the evidence was offered by the plaintiff below for the purpose of showing "abandonment of charter," dissolution of the "Farmers' Bank," and organization of the "Farmers' Bank, Carlisle." We submit that it establishes the existence of the "Farmers' Bank," and that both on the law and on the facts the court below should have found that the "Farmers' Bank, Carlisle," has no corporate being, and that the bank which did discount the notes in suit violated its charter in taking more than six per cent. as the rate of discount; and as by the express terms of its charter, this forfeits the whole debt and interest, judgment should have been entered for the defendant.

*W. F. Sadler* and *Lemuel Todd*, for defendant in error.—The corporate being began with the approval of the Act of 1871. When the charter constitutes persons named, and those who should become associated with them, a corporation, they become such immediately on the passage of the act: Talladega Insurance Company *v.* Sanders, 43 Ala. 115. Omission to organize in the way prescribed by the charter, does not take away the corporate franchise, and will not support a plea of no corporation: Brouer *v.* Appleby, 1 Sandf. (Superior Ct.) 158. When a corporation is created by a general statute, which requires preliminary steps to be taken by the corporators before it possesses legal existence, it must, in order to prove its corporate existence, show that all such preliminary steps have been taken; it is otherwise where the charter is by a special act, which declares it to be a body corporate: Potter on Corporations, sect. 66. So, when a charter creates a corporation *in præsenti*, but with a proviso that it shall do certain things, the omission to do those things, though cause for dissolution by courts, cannot be inquired into collaterally. A debtor of the company, when sued, could not set up want of compliance with the proviso, unless there had been a judicial dissolution of it for non-compliance: People *v.* Manhattan Co., 9 Wend. 383. The act itself constituting the corporation, the production of the charter is suffi-

13 NORRIS—28

cient proof of incorporation : Fire Department *v.* Kip, 10 Wend. 266. See, also, Rathborn *v.* Tioga Navigation Co., 2 W. & S. 74; Hughes *v.* Parker, 20 N. J. 58; Newcomb *v.* Reed, 12 Allen 362 ; Irvine *v.* Bank, 2 W. & S. 190.

Spahr dealt with the bank as such, and he cannot therefore deny its corporate existence : Congregational Soc. *v.* Perry, 6 N. H. 164 ; Manufacturing Co. *v.* Davis, 14 Johns. 238 ; Worcester Med. Inst. *v.* Harding, 11 Cush. 285 ; Circleville *v.* Renick, 15 Ohio 322 ; Jones *v.* Bank, 8 B. Monroe 122 ; Angell & Ames on Corp., sect. 94 ; Leonardsville Bank *v.* Willard, 25 N. Y. 574 ; Franklin *v.* Twogood, 18 Iowa 515 ; Bigelow on Estoppel 425, and note 4.

Mr. Justice MERCUR delivered the opinion of the court, May 24th 1880.

A corporation is the mere creature of the law. It can exercise no powers which are not expressly conferred or necessarily implied in furtherance of the object of its creation : Diligent Fire Co. *v.* Commonwealth, 25 P. F. Smith 295. When, however, a charter has actually been granted to certain persons to act as a corporation, and they are actually in the possession and enjoyment of the corporate rights granted, such possession and enjoyment will be held valid against one who has dealt with them in their corporate character : Angell & Ames on Corp., sect. 80. He cannot be permitted to prove, in a collateral proceeding, that a condition precedent to its full corporate existence has not been complied with. As against him, the charter and a user of rights claimed to have been conferred by it, are sufficient. When there is a de facto corporation, and the state does not interfere, its corporate existence and its ability to contract cannot be questioned in a suit brought upon an evidence of a debt given to it : Commissioners *v.* Bolles, 4 Otto 104. It is well settled that although a charter may be declared null and void by the proper authority, yet the violation thereof cannot be determined in a collateral suit : Irvine *v.* Lumbermens' Bank, 2 W. & S. 190.

The facts show that the bank has professed to carry on all its business under the Act of 15th of March 1871. On the 1st of May 1871, it reported to the auditor general that it had ceased to act under its former charter, and commenced operations under the Act of 15th March 1871. It transferred all the stock and assets of the former corporation to the present one. It gave up the exercise of all powers under the old charter, and has continuously used and exercised the powers given by the new charter. Although it has been done in an irregular manner, yet it lies not in the plaintiff in error to question its powers in this transaction and in this suit.

Judgment affirmed.