Lilley, Appellant, v. Pennsylvania Railroad Company.

*Railroads—Condemnation proceedings—Expert witnesses—Qualifications—Evidence.*

Witnesses in railroad condemnation proceedings are not qualified as experts to express an opinion as to market value, where they state that they have no knowledge of the value of lands in the neighborhood based on sales, but only a knowledge of the value of coal leases, and a knowledge of royalties paid to the lessors of coal.

*Railroads—Condemnation proceedings—Farm crossings—Abolition of farm crossings.*

Where a railroad company condemns additional land along its right of way, and fails to extend farm crossings previously maintained, over the additional track to be laid on the newly condemned land, the jury may consider the loss of these crossings as a proper element of damage in making up their verdict.

Argued Oct. 30, 1907. Appeal, No. 200, Oct. T., 1907, by defendant, from judgment of C. P. Washington Co., Feb. T., 1890, No. 216, on verdict for plaintiff in case of Thomas Lilley, Executor, v. Pennsylvania Railroad Company, Successor to the Pittsburg, Virginia & Charleston Railway Company. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Affirmed.

Issue to determine the value of land condemned by defendant. Before McILVAINE, P. J.

The opinion of the Supreme Court states the case.

The court under objection and exception rejected the witnesses Flint and Graham to whom reference was made in the opinion of the Supreme Court. [1, 2]

The court permitted the witness, Birmingham, to testify under objection and exception. [3]

The court charged in part as follows :

[When the defendant company constructed its first track it entered into an agreement with Thomas Lilley, Sr., in the settlement of his claim for damages done his farm, and in that agreement the railroad contracted to construct and maintain

and it did construct and maintain across said track five farm crossings, so that he could pass from the main part of the farm to the part cut off by the railroad lying next the river. In taking this additional 100 feet along the river side of the old track in 1889 the defendant company made no provision for extending these five farm crossings over the additional track to be laid upon it, thus virtually destroying the five crossings. Now, gentlemen, in your deliberations you must take it as one of the facts of this case that the defendant company had the right under its charter and the laws of this commonwealth to take this additional strip of Thomas Lilley's land and these farm crossings, and the company is not in any sense to be considered by you as a trespasser or as a wrongdoer to be mulcted in damages for a wrong which it has done to Thomas Lilley, Sr. The law gives the railroad company this additional land and these crossings, on one condition, however, and that is that Thomas Lilley, Sr., or his legal representatives, be fully and fairly compensated in dollars and cents for the land taken, injured or destroyed, and the undisputed right of the plaintiff in this case, therefore, is to receive at your hands such a verdict as will give him in dollars and cents this fair and just compensation.] [4]

[One of the acts of assembly to which I referred a few moments ago, in one of its sections provides that a railroad company in building a road across a farm, for the accommodation of the persons owning or possessing the land through which the railroad may pass, shall be in duty bound to make or cause to be made, a good and sufficient causeway, whenever the same may be necessary to enable the occupant or occupants of the surface of said land to cross or pass over the same, with wagons, carts and implements of husbandry, as occasion may require; and said causeway or causeways, when so made, shall be maintained and kept in good repair by the railroad company. Now, in this case, the railroad company had a right in condemning this strip 100 feet wide and 5,000 feet long—to destroy, if necessary, these five crossings that had been made under the agreement with Thomas Lilley, Sr. Thomas Lilley, Sr., had a property right in those five crossings, but it was only as they were appurtenant to the land, and the same power that the railroad had (this right of

eminent domain) to condemn the additional land also gave it the right to condemn these five crossings which were appurtenances to the land; I say it had a right to do that; but after it made this additional appropriation Mr. Lilley would be entitled to the farm crossing that the act of assembly gives him, and we instruct you that is the law in this case as tried. So in estimating any damages that the farm as a whole has sustained by reason of the access from the main body thereof to this thirty-five acres which is next the river being cut off, if this caused any depreciation—why you will recollect that he will have one farm crossing, but not five.] [5]

Verdict and judgment for plaintiff for $30,000. Plaintiff appealed.

*Errors assigned* were (1, 3) rulings on evidence, quoting the bill of exceptions; (4, 5) above instructions, quoting them; and (6) that the charge of the court was insufficient as to damages for the destruction of the five crossings.

*Wm. B. Rodgers*, with him *J. W. Kraus, W. S. Parker, Winfield McIlvaine* and *Norman E. Clark,* for appellant, cited: Lally v. R. R. Co., 215 Pa. 436.

*R. W. Irwin*, with him *James A. Wiley* and *A. T. Morgan,* for appellee, cited: Schuykill River, etc., R. R. Co. v. Stocker, 128 Pa. 233; Friday v. Penna. R. R. Co., 204 Pa. 405.

Opinion by Mr. Justice Stewart, January 6, 1908:

This was a proceeding to determine the damages plaintiff was entitled to, in consequence of the appropriation by the defendant company of certain land in the widening and improving of its roadbed, under the provisions of the act of March 11, 1869. The testimony of two of the witnesses called by plaintiff to show the value of the farm at the time of the appropriation, was rejected, on the ground that they had not qualified themselves upon examination to express an opinion on the subject. The first of these witnesses, Flint, when asked if he knew the values of property in this particular vicinity at the time inquired of, 1889, replied, " Nothing, only coal

properties as to the value of leases." When asked if from his "knowledge of sales and other information he had," he was able to tell about what this property was worth, his reply was "I could give an estimate, I think." If the estimate he was prepared to give was based on his general knowledge of sales of land in that neighborhood, it would doubtless have been received, since such knowledge ordinarily qualifies a witness to testify in such an inquiry as this ; but the witness had expressly said that he knew nothing of the value of land in the neighborhood, and had known of but one sale, a coal property, which was on the other side of the river. A very reasonable conclusion from this would be, that the estimate he was prepared to give was based on the other information he had, the nature and character of which was wholly undisclosed. The other witness, Graham, had been interrogated fully as to the value of the harbor on the river front of plaintiff's land for opening and developing a coal property. The estimate he was prepared to give evidently included the value of the land as a coal property, and yet he admitted that all the knowledge of coal value he had was in connection with royalties paid to the owner. That the coal deposit affected the value of plaintiff's land was beyond question ; but one whose knowledge on the subject was limited to royalties paid for the privilege of mining coal, could hardly be qualified to speak intelligently as to the market value of the land carrying the coal ; yet speaking from this data and this alone, he said he thought he was able to fix "a value upon a sale, as if sold out and out." The court did not think this qualified the witness to express an opinion as to the market value of the property, nor do we. No error was committed in rejecting the testimony of these witnesses. In reply to plaintiff on this branch of the case, defendant called a witness, Birmingham, who was allowed to express an opinion as to the value of the land over objection made by the plaintiff. This witness on his preliminary examination said unqualifiedly that he was familiar with the market values of land in this particular neighborhood at the time of the appropriation and prior thereto. If he was, this qualified him to express an opinion, the value of the opinion depending largely upon the extent of this knowledge. While the cross-examination of the witness

went far towards reducing the value of his opinion, it did not make his incompetency so apparent that we could feel justified in holding the admission of his testimony error. It was a question resting largely in the discretion of the court, and was, we think, properly decided. The first and second assignments of error are overruled.

Thomas Lilley, who owned this farm at the time the railroad was located thereon, granted to the railroad company a right of way over it. By the terms of the agreement the railroad company covenanted to construct and maintain, and did construct and maintain, across the track of their road for the convenience and accommodation of the grantor five farm crossings. In 1899, when the appropriation was made for which damages are now claimed by the executor of the grantor, the five crossings were still being maintained. How far they were interfered with by the appropriation we have no means of knowing, except as the matter is referred to in the charge of the court. The court charged as follows: "In taking this additional 100 feet along the riverside of the old track in 1889, the defendant company made no provision for extending these five farm crossings over the additional track to be laid upon it, thus virtually destroying the five crossings." The jury was instructed that the loss of these crossings was a proper element of damage to be considered in making up the verdict. It is insisted upon by plaintiff's counsel, in assignments four and five, that the matter of the crossings was not involved in the case under the pleadings, and that the court erred in introducing it into the case. That it was a proper subject for consideration under the pleadings is beyond question. Under the issue the jury was to determine what amount would compensate the plaintiff for his loss sustained by reason of the appropriation of his land, measured by the ordinary standard of depreciation in market value, taken as a whole. The fact, if it were a fact, that the means of access from one part of the farm to the other were reduced from five crossings to one, would obviously have some effect upon the market value of the property. How the pleadings could exclude this particular element of damage from the consideration of the jury is not explained. Whether the court erred in making reference to it in the charge, de-

pends entirely upon whether there was any evidence in the case warranting such reference. To determine certainly this question would require a closer examination of the 388 pages of testimony than we have been able to make. Such examination as we have made, inclines us to the view that the court must have derived its knowledge with respect to the crossings from the remarks of counsel, and not from the evidence; but be this as it may, whether properly or improperly submitted to the jury for their consideration, the effect of such submission could not have been to reduce the verdict for plaintiff below what it otherwise would have been. If it had effect at all, it must have been to enlarge, and not diminish. Therefore, being without prejudice in this regard, plaintiff is in no position to complain. What may be the effect in connection with another proceeding still pending in the court below, in which the railroad company is seeking to condemn land of the plaintiff on the other side of its tracks, including the five farm crossings, is a matter that does not concern us in the present inquiry. It is further objected that if the crossings were involved in the case, the charge of the court with respect to them was inadequate. For reasons made obvious by the reference above, we refrain from any discussion of this objection, and simply express our conclusion that the charge was entirely adequate. The assignments of error are overruled.

Judgment affirmed.