## Williams, Appellant, *v.* The Delaware, Lackawanna and Western Railroad Company.

*Eminent domain—Railroads—Condemnation proceedings — Private crossings—Cattle passes—Location of line—Width—Acts of February 19, 1849, P. L. 79, and June 19, 1871, P. L. 1360.*

1. Where a railroad company pays a substantial monetary consideration for land and further agrees to construct a crossing, the agreement to construct the crossing is severable in its nature and does not prevent the railroad from subsequently rescinding this part of the contract if found necessary in the improvement of its road, substituting, however, the equivalent in monetary damages.

2. Where a railroad company which has constructed a cattle-pass over its lines relocates its line without providing a crossing, the destruction of the usefulness of the cattle-pass is an incident to the condemnation of the adjoining land; its loss becomes a proper item

of damage in considering the value of the property taken or destroyed, but does not entitle the owner of the land to an injunction to restrain the construction and operation of the new line.

*Corporations—Railroads—Board of directors—Resolutions—Construction—Ineligibility of directors—Collateral attack.*

3. A resolution adopted by the board of directors of a railroad company locating a new line described the new line as "extending from a point near the railroad station of said company in New Milford Borough, Susquehanna County, Pennsylvania, to a point about one mile northwest of the station of said company, situate in the Borough of Hallstead, said Susquehanna County......according to the location shown upon blueprint hereto attached and hereby made a part of this resolution......" A property owner whose land would be taken by the new route contended that the resolution was ambiguous because the clause "situate in the Borough of Hallstead" must refer to a point and not to station, that a point one mile northwest of the station was not within the Borough of Hallstead, but in Great Bend Township, and that this terminus was not definitely fixed. *Held,* that the phrase "situate in the Borough" qualified the word "station," not the word "point"; that as the blueprint which was a part of the resolution showed the station to be within the Borough of Hallstead, the termini of the route were sufficiently established and the contention was without merit.

4. In such case it was not material that the resolution did not designate the width of the strip to be appropriated by the railroad company; in the absence of any designation of width at the time of entry the presumption, under the General Railroad Act of February 19, 1849, P. L. 79, is that a width of sixty feet was intended.

5. The eligibility of the directors of the corporation to hold office cannot be tried in proceedings for an injunction to restrain the railroad company from taking private property under a resolution of the board; the remedy in such case is by quo warranto.

6. Under the Act of June 19, 1871, P. L. 1360, the court can inquire at the instance of an individual whether a corporation has the right or power to do a particular act complained of; if such power exists the authority of the court to interfere is at an end. The question of irregularity in proceeding under the charter can be raised only by the Commonwealth.

7. Where in such case a majority of defendants' directors were required by law to be citizens of Pennsylvania, and it appears that a majority of the board were not citizens of Pennsylvania, it was, nevertheless, not error to refuse an injunction to restrain the railroad from condemning land under a resolution of the board; as long as the right of the directors to hold office was not contested

their acts in the exercise of the duties of their office could not be questioned in a collateral proceeding.

8. The fact that a railroad company in providing for the condemnation of land for the relocation of its lines makes no provision for a farm crossing over the new line, is no ground for enjoining the construction and operation of the new line. In such case the plaintiff's remedy is at law.

Argued March 16, 1916. Appeal, No. 59, Jan. T., 1916, by plaintiff, from decree of C. P. Susquehanna Co., April T., 1914, No. 100, in equity, refusing an injunction, in case of John W. Williams v. The Delaware, Lackawanna and Western Railroad Company. Before Mestrezat, Potter, Stewart, Moschzisker and Frazer, JJ. Affirmed.

Bill in equity for an injunction. Before Little, P. J.
The opinion of the Supreme Court states the facts.
The court on final hearing dismissed the bill. Plaintiff appealed.

*Errors assigned* were in dismissing exceptions to various findings of fact and law and the decree of the court.

*H. C. Reynolds,* with him *Charles L. VanScoten,* for appellant.—In eminent domain proceedings under the Act of March 17, 1869, P. L. 12, easements reserved in a deed conveying a right of way will not be destroyed without specific appropriation; where a statute creates a right or liability or imposes a duty and prescribes a particular remedy for its enforcement, it is exclusive and must be strictly pursued: Curran v. Delano, 235 Pa. 479; Green v. Balto. & Ohio R. R. Co., 245 Pa. 35.

The termini of the new road were established only by inference; they were not definitely located: Johnston v. Del., Lack. & Western R. R. Co., 245 Pa. 338.

The resolution of August 28, 1913, describes the appropriation only according to line and location as shown upon a blueprint; it nowhere defines or describes the

width of the improvement or the area, extent or owner of the lands proposed to be appropriated; it is therefore, void: Dryden v. Pittsburgh, Virginia & Charleston Ry. Co., 208 Pa. 316; In re New York & Boston R. R. Co.'s Petition, 62 Barbour 85.

The resolution was void because a majority of the board of managers were nonresidents and the corporate powers were not exercised within the Commonwealth as required by the Act of January 7, 1867, P. L. 1368. The said act makes it the duty of the court to inquire whether a corporation has the right claimed and if not to restrain it by injunction: Edgewood R. R. Co.'s App., 79 Pa. 257; Shamokin Boro. v. Shamokin & Mt. Carmel Elect. Ry. Co., 196 Pa. 173; Germantown Pass. Ry. Co., et al., v. Citizen's Pass. Ry. Co., 151 Pa. 141; Penna. Railroad Co.'s App., 115 Pa. 529; Commonwealth v. Pittsburgh & Connellsville R. R. Co., 24 Pa. 159.

The existence of a remedy at law for the recovery of money damages does not preclude plaintiff's right to equitable relief: Evans v. American Natural Gas Co., 55 Pa. Superior Ct. 116; Crider v. Pittsburgh, Harmony, Butler & New Castle Ry. Co., 54 Pa. Superior Ct. 587; Story v. N. Y. Elevated R. R. Co., 90 N. Y. 122, 43 Am. Rep. 146; Lahr v. Metropolitan Elevated Ry. Co., 104 N. Y. 268.

*H. A. Knapp,* of *Warren, Knapp, O'Malley & Hill,* and *J. H. Oliver,* with them *H. A. Denney, A. B. Smith* and *D. R. Reese,* for appellee.—It is not necessary in eminent domain proceedings under the Act of March 17, 1869, P. L. 12, for a railroad in condemning a strip of land for a new right of way to specifically appropriate or condemn an easement on land adjoining this strip of land to be taken for the new right of way: Lilley v. Penna. R. R. Co., 219 Pa. 447; Stoner v. Pittsburgh, Bessemer & Lake Erie R. R., 229 Pa. 521.

The termini of the improved railroad were established

and definitely located by the resolution of which the map is a part: Scranton Gas & Water Co. v. Del., Lack. & Western R. R. Co., 225 Pa. 152.

The board of directors were not required to designate the exact width and area of the lands to be appropriated at each and every point along the improved line before the railroad company took possession of the land by filing the condemnation bonds: Williamsport & North Branch R. R. Co. v. Philadelphia & Erie R. R. Co., 141 Pa. 407; Johnston v. Del., Lack & Western R. R. Co., 245 Pa. 338; Scranton Gas & Water Co. v. Delaware, Lackawanna & Western R. R. Co., 225 Pa. 152; Dilts v. Plumville R. R. Co., 222 Pa. 516.

The directors were at least de facto officers whose eligibility could not be questioned in collateral proceedings, but only in quo warranto proceedings: Charitable Association in the Middle Parish in Granville v. Baldwin, 42 Mass. 359; Mechanics' National Bank of Newark v. Burnet Mfg. Co. & Squier, 32 N. J. Eq. 236; Lawson, et al., v. Kolbenson, et al., 61 Ill. 405; Wallace & Sons v. Walsh, 125 N. Y. 26; Baird v. Bank of Washington, 11 S. & R. 411; M'Gargell v. Hazleton Coal Co., 4 W. & S. 424; Sturgeon v. Comm., 22 W. N. C. 146; Wright v. Lee, et al., 51 N. W. Repr. 706; Bedford Springs Co. v. McMeen, 161 Pa. 639; Brower v. Kantner, 190 Pa. 182; Chamberlain v. Plainsville & Hudson R. R. Co., 15 Ohio 225; Nat. Docks Ry. Co., et al., v. Cent. R. R. Co. of N. J., et al., 32 N. J. Eq. 755; Farnham v. Delaware & Hudson Canal Co., 61 Pa. 265; Rudolph v. Penna. Schuylkill Val. R. R. Co., 166 Pa. 430; Pittsburgh, Shawmut & Northern R. R. Co. v. Keating & Smethport R. R. Co., 233 Pa. 71; Dyer v. Walker, 40 Pa. 157; Spahr v. Farmers' Bank, Carlisle, 94 Pa. 429; Western Pa. R. R. Co.'s App., 104 Pa. 399; Windsor Glass Co. v. Carnegie Co., 204 Pa. 459; Tibby Bros. Glass Co. v. Penna. R. R. Co., 219 Pa. 430; Lejee, et al., v. Continental Pass. Ry. Co. of Philadelphia, 10 Philadelphia 362.

The plaintiff was not entitled to equitable relief; he

had an adequate remedy at law: Lilley v. Penna. R. R. Co., 219 Pa. 447; Stoner v. Pittsburgh, Bessemer & Lake Erie R. R., 229 Pa. 521; Wanamaker v. Schuylkill River East Side R. R. Co., 244 Pa. 214; Lilley v. Pittsburgh, Virginia & Charleston Ry. Co., 213 Pa. 247; Kenney v. Pittsburgh, Virginia & Charleston Ry. Co., 208 Pa. 30; Dryden v. Pittsburgh, Virginia & Charleston Ry. Co., 208 Pa. 316.

OPINION BY MR. JUSTICE FRÁZER, October 2, 1916:

Plaintiff is owner of farm land in Susquehanna County abutting on both sides of defendant's right of way which it purchased from plaintiff's predecessor in title in 1869. The deed recited a consideration of $2,000 and contained a clause requiring the railroad company to "make standard grade crossing, make and maintain fences; said company to make a cattle-pass on the line of R. Ives and said Dayton (the grantor) wide enough for both farms and not to dam the water so as to stand on said Dayton's land above the line of the railroad." Defendant proceeded to construct a cattle-pass or way, a drainage system and a grade crossing pursuant to its agreement and maintained them up to the time of relocating its road. The cattle-pass was used by plaintiff and the owners of the adjoining farms as furnishing a safe and convenient access to the river for live stock and to the remaining portion of plaintiff's farm lying between the railroad and the river. It was located on the northern boundary of plaintiff's land, while the grade crossing was somewhat below the middle. In 1913 defendant, by resolution of its board of managers, decided that the portion of its road "extending from a point near the railroad station of said company in New Milford Borough, Susquehanna County, Pennsylvania, to a point about one mile northwest of the station of said company situate in the Borough of Hallstead, said Susquehanna County, be straightened, widened, enlarged and otherwise improved according to the location shown upon the blueprint hereto at-

tached and made a part of this resolution, entitled 'Map of the Delaware, Lackawanna and Western Railroad Co. from New Milford station to a point one mile northwest of Hallstead,' " and that the said land be purchased and appropriated for such purposes. The map accompanying this resolution showed the location of the new line as it passed through plaintiff's property between the old line and the river, dividing this portion into two parts, access to the part remaining between the new line of the railroad and the river being entirely cut off, no provision for a farm crossing having been made. The part between the old and new roadbeds continued to be accessible by the grade crossing. The cattle-pass remained, but, as the appropriation for the new line at this point covered the entire width between the old line and the river, the pass was no longer of use to plaintiff as it did not afford access either to the river or his other land.

Defendant being unable to agree with plaintiff upon a suitable compensation for the property taken, instituted condemnation proceedings and filed a bond which was duly approved by the court March 24, 1914. Defendant thereupon proceeded in good faith with the improvements and has expended a large sum of money thereon. March 23, 1914, plaintiff filed the bill in this case to restrain the condemnation proceedings, alleging the resolution of defendant's board of managers was improper and ineffective; that defendant was without authority to interfere with the cattle-pass unless by its express appropriation and condemnation, and that the resolution did not properly locate the line of defendant's road through plaintiff's land and was insufficient to constitute a lawful appropriation. Upon hearing, the bill was dismissed and plaintiff appealed.

The first question raised is the right of defendant in condemnation proceedings under the Act of March 17, 1869, P. L. 12, to destroy or interfere with the use of the cattle-pass without specifically appropriating the same. The construction of the pass was pursuant to a provision

in the grant of the right of way and presumably a part of the consideration for the purchase of the land by defendant. There was also a substantial money consideration, and the agreement to construct the crossing being severable in its nature does not prevent defendant from subsequently rescinding this part of the contract, if found necessary in the improvement of its road, and substituting the equivalent in monetary damages: Lilley v. Pittsburgh, Virginia & Charleston Ry. Co., 213 Pa. 247. Plaintiff contends, however, that, conceding the right of defendant to appropriate the crossing, this must be done by condemnation proceedings regularly entered pursuant to the Act of June 7, 1901, P. L. 531. It should be noted no direct attempt is made to take or destroy the cattle-way and continue the operation of defendant's road as it heretofore existed. The pass remains, and is affected only indirectly by reason of the total destruction of its usefulness due to the location of the new route. It is not on the land condemned for the new line, consequently there is no occasion to make it the specific subject of condemnation. Destruction of its usefulness is an incident to the condemnation of the adjoining land, and its loss therefore becomes a proper item of damage in considering the value of the property taken or destroyed by reason of the new location of defendant's road: Lilley v. Penna. R. R. Co., 219 Pa. 447; Stoner v. Pittsburgh, Bessemer & Lake Erie R. R., 229 Pa. 521. The case of Green v. Balto. & Ohio R. R. Co., 245 Pa. 35, relied on by plaintiff, does not establish a different rule. In that case the railroad company destroyed a private crossing over its right of way, constructed pursuant to the requirements of the Act of February 19, 1849, P. L. 79. It was there held a court of equity had jurisdiction to compel the restoration of the crossing, notwithstanding the right to damages given by the Act of 1849. The court in that case (page 39) referred to the power given railroad companies by the Act of June 7, 1901, P. L. 531, to discontinue and remove private crossings, but stated that as the removal and dis-

continuance of plaintiff's crossing had not been pursuant to any law, the rights of plaintiff remained and such rights were as sacred as any other property rights (page 38). In the present case defendant has not directly interfered with the cattle-pass but merely rendered it useless by reason of the exercise of a statutory right to relocate its road. The loss of the pass accordingly becomes a proper subject for consideration in the assessment of damages due to the location of the new right of way and no express condemnation of the pass was necessary.

In the resolution adopted by the board of managers, the location of the new road was given as "extending from a point near the railroad station of said company in New Milford Borough, Susquehanna County, Pennsylvania, to a point about one mile northwest of the station of said company situate in the Borough of Hallstead, said Susquehanna County......according to the location shown upon blueprint hereto attached and hereby made a part of this resolution." Plaintiff contends this resolution is ambiguous because the clause "situate in the Borough of Hallstead" must refer to "point" and not to "station" and as a point one mile northwest of the station is not within the Borough of Hallstead, but in Great Bend Township, this terminus is not definitely fixed. This view is contrary to the grammatical rule of construction according to which the adjective phrase "situate in the borough" qualifies the last preceding substantive, "station." The recital of the map in the resolution confirms this conclusion. The blueprint, attached to and made a part of the resolution, shows the station is within the Borough of Hallstead and that a point one mile northwest would come within Great Bend Township. The case of Johnston v. Del., Lack. & Western R. R. Co., 245 Pa. 338, relied upon by plaintiff, is not applicable here. In that case a resolution had been adopted, accompanied by a map, both declaring an intention to relocate the road between Clarks Summit and Hallstead. This line was abandoned, and, by subsequent resolution, to which a

copy of the same plan was attached, it was decided to appropriate land between Clarks Summit and New Milford, the latter place being located between Clark's Summit and Hallstead. The plan accompanying the resolution therefore indicated not only the route between the points designated therein, but included the entire distance to Hallstead. We there held that as the resolution called for New Milford as the terminus, defendant had no right to appropriate property beyond that point, and, that, as there was a conflict between the resolution and the plan, the former must control.

Plaintiff insists that the resolution of the board of managers in locating the new line was defective in that it failed to designate the exact width and area of lands to be appropriated at all points along the line. The procedure to appropriate property is thus stated in Johnston v. Del., Lack. & Western R. R. Co., 245 Pa. 338 (page 341) : "The successive steps necessary to vest title to the roadway in a railroad company have been pointed out in many of our decisions. They are: (a) a preliminary survey of the lands for the purpose of exploration made by engineers and surveyors who, after running and marking one or more experimental lines, report their work with necessary maps and profiles to the company; (b) the selection and adoption of a line or one of the lines so run, as and for the location of the proposed railroad by appropriate action by the board of directors; and (c) compensation made or secured by the corporation to the owner for the damages he has sustained by reason of the appropriation of his land."

The general railroad Act of Feb. 19, 1849, P. L. 79, limits the right of way to a roadbed sixty feet in width "except in the neighborhood of deep cuttings, or high embankments, or places selected for sidings, turnouts, depots, engine or water stations," and in absence of any designation of width at the time of entry it will be presumed the full width was intended: Dilts v. Plumville R. R. Co., 222 Pa. 516; Jones v. Erie & Wyoming Val.

R. R. Co., 144 Pa. 629. The Act of 1869 contains no statement of the width of the new line, but authorizes the condemnation of such property as may be deemed necessary. In absence of express designation of width, the provisions of the Act of 1849 should apply by analogy and a presumption would arise that sixty feet were included. While the proper time to designate the width is when the appropriation is made, failure to do so should not prevent the exercise of the right afterwards within a reasonable time: Jones v. Erie & Wyoming Val. R. R. Co., 169 Pa. 333. It may be impracticable to attempt to exactly define the limits of the land required from a preliminary survey. This must necessarily depend somewhat on the grade, character of the locality and the strata of earth, and similar matters which can be accurately determined only after a complete survey has been made on the line adopted. The adoption of the line gives notice to the owner that at least a sixty foot strip will probably be taken, and gives him an opportunity to protect his rights.

It appears all the managers or directors of defendant company are citizens and residents of other states and that the resolution authorizing the change in the location of the road was passed in the City of New York. Defendant is a Pennsylvania corporation, however, and subject to the General Railroad Act of 1849. The Act of January 7, 1867, P. L. 1368, provides that any citizen of the United States shall be eligible to the office of director of a railroad company, but requires a majority of the board of directors to be citizens of Pennsylvania. Plaintiff contends that since the board of directors of defendant company were not made up as required by this act, so far as residence is concerned, their act in passing the resolution condemning his property was void. Plaintiff is not in a position to raise this question in the present proceeding. Defendant is incorporated and its officers, so far as appears, have been duly elected and are at least officers de facto and so long as their right to hold

office is not being contested their acts in the exercise of the duties of their office cannot be attacked in a collateral proceeding: Baird v. Bank of Washington, 11 S. & R. 411; M'Gargell v. Hazleton Coal Co., 4 W. & S. 424. In such case the remedy is by quo warranto to try the title to office and the question cannot be raised by proceedings for an injunction: Bedford Springs Co. v. McMeen, et al., 161 Pa. 639; Spahr v. Farmers' Bk., Carlisle, 94 Pa. 429; Pittsburgh, Shawmut & Northern R. R. Co. v. Keating & Smethport R. R. Co., 233 Pa. 71. In Tibby Bros. Glass Co. v. Penna. R. R. Co., 219 Pa. 430, it was held that a landowner could not maintain a bill to enjoin condemnation of his land on the ground that the corporation was illegally constituted by unlawful merger with another company. The Act of June 19, 1871, P. L. 1360, does not help plaintiff. This act permits an individual to contest the right of a corporation to do certain acts. It has been uniformly held that under this act the inquiry is limited to the question whether or not the defendant has the right or power to do the particular act complained of. If it appears such power exists, the authority of the court to interfere is at an end. The question of regularity in proceeding under the charter can be raised only by the Commonwealth: Western Penna. R. R. Co.'s App., 104 Pa. 399; Windsor Glass Co. v. Carnegie Co., 204 Pa. 459; Tibby Bros. Glass Co. v. Penna. R. R. Co., 219 Pa. 430. Under the foregoing decisions our inquiry is limited to whether defendant has exceeded its rights under the Act of 1869, and no question can be raised as to the right of its directors or managers to hold office.

It is finally argued by plaintiff that he is entitled to equitable relief for the reason that the new road as constructed makes no provision for a farm crossing to the portion of land remaining between the railroad and river, thus entirely cutting off access to about 18 acres of ground. This fact would, of course, furnish a material item of damage in the condemnation proceedings now

pending; but whether plaintiff has also an equitable remedy to restrain defendant's act must depend upon the Act of 1869. While the Act of 1849 specially provides for farm crossings to connect parts of a farm separated from other parts, no such provision appears in the Act of 1869. The legislature apparently deemed the right to damages sufficient, and, if the absence of a crossing depreciates the value of the farm, the damages to the property would to that extent be increased. This fact would no doubt have considerable weight in determining the question whether a suitable farm crossing should be provided. But if no crossing is provided, a landowner has no more standing to contend that his remedy at law is therefore inadequate than in any other case where his property is taken under the right of eminent domain. In Marlor v. Philadelphia, Wilmington & Balto. R. R., 166 Pa. 524, and Dryden v. Pittsburgh, Virginia & Charleston Ry. Co., 208 Pa. 316, it was held the provisions of the Act of 1849, exempting a dwelling house from condemnation, would not be read into the Act of 1869. The same reasoning also applies to farm crossings, and no right to equitable relief exists because of defendant's failure to provide one.

This disposes of all questions covered by the statements of the questions involved.

The assignments of error are overruled and the judgment is affirmed.