## Hilliard v. Delaware, Lackawanna & Western R. R. Co.

*Robert E. James,* for complainant.
*Kirkpatrick, Maxwell & Chidsey,* for defendant.

STEWART, P. J., Dec. 10, 1928.—Complainant's bill alleges that he is the owner of two acres of land in the village of Martin's Creek, through which a single track of the defendant runs, and across which track there ran a public highway at grade; that, by order of the Public Service Commission, dated Dec. 15, 1925, the said public highway was changed so that the same was carried over the said railroad track by a bridge and viaduct located on the land of complainant, but at a considerable distance from the above grade crossing and at a great height above the level thereof, the construction of which viaduct greatly raised the level of said highway at the western end of said viaduct above its original level. He also avers that said grade crossing was ordered abolished and barricaded, but the public highway which led to the crossing was not vacated; that he conducts a retail coal business and sand and gravel business on the land; that on the western section of his property,

as bisected by the railroad, he has buildings which are on level ground; that the eastern section of his land was used for the storage of coal; that there was no way of crossing with vehicles from the eastern to the western section of his land except by the barricaded crossing; that access to the relocated public highway is by means of a road which has a grade of over 11 per cent.; that it is impossible for complainant to use it "for the hauling of necessarily heavy loads of coal, sand and gravel under certain weather conditions and at no time with safety and profit." He also avers that he requested defendant to make a good and sufficient causeway which would enable him to cross over said railroad track with wagons, carts and other vehicles, and that defendant has refused to make the construction. His prayer is that the defendant be compelled to make a crossing over the track from the east side to the west side, and that defendant may be compelled to grant the complainant a right of way and perpetual easement across the defendant's tracks. Complainant does not ask for the payment of any damages. The defendant company demurs to the bill for the following reasons:

1. That it sets forth no cause of action.

2. That complainant is not entitled to relief in equity.

3. That under the Public Service Commission Act of the General Assembly, approved July 26, 1913, P. L. 1374, and particularly section 12 of article V and clause T, section 1 of article II thereof, the Public Service Commission of Pennsylvania has exclusive jurisdiction to establish, alter, relocate, remove, or abolish grade crossings, and the defendant, as a public service company, is required to obey and abide by all lawful orders thereof.

5. That if the complainant has sustained any damages by reason of the abolishment and relocation of Hutchison's Crossing, he has a full, complete and adequate remedy at law to recover said damages under article V, section 12, of the Act of 1913, its supplements and amendments.

6. That neither section 12 nor any other section of the Act of Assembly approved Feb. 19, 1849, P. L. 79, applies to the facts as alleged in the bill of complaint, and this court is without jurisdiction to grant the relief prayed for in said bill.

The bill does not aver the date when the defendant constructed its railroad. We know that it has been there at least twenty-five years. Neither does the bill aver when it was that the complainant asked the defendant to construct the causeway, but it will be admitted that it was after the new viaduct had been completed in pursuance of the order of the Public Service Commission of Dec. 15, 1925. That is to say, for all these years complainant has used the public highway crossing known as Hutchison's Crossing up until the Public Service Commission for the public good relocated the same public road on complainant's land and erected a "Barricade" at the crossing. The defendant company, it will be perceived, has done absolutely nothing in this matter. It would seem to us that the easiest way to solve this difficulty would be to obtain an order from the Public Service Commission allowing the old crossing to be used by the complainant, and, if necessary, placing the "Barricade" at the limits of his property. However, that matter is only by way of suggestion. The complainant in his bill claims that he is entitled to this crossing by reason of the 12th section of the Act of Feb. 19, 1849, P. L. 79. The section is as follows: "Whenever, in the construction of such road or roads, it shall be necessary to cross or intersect any established road or way, it shall be the duty of the president and directors of the said company so to construct the said road across such established road or way as not to impede the passage or transportation of persons or property along the same; and, for the

accommodation of all persons owning or possessing land through which the said railroad may pass, it shall be the duty of such company to make, or cause to be made, a good and sufficient causeway or causeways whenever the same may be necessary to enable the occupant or occupants of said land to cross or pass over the same with wagons, carts and implements of husbandry as occasion may require; and the said causeway or causeways, when so made, shall be maintained and kept in good repair by such company; and if the said company shall neglect or refuse, on request, to make such causeway or causeways or, when made, to keep the same in good order, the said company shall be liable to pay any person aggrieved thereby, all damages sustained by such person in consequence of such neglect or refusal; such damages to be assessed and ascertained in the same manner as provided in the last section for the assessment of damages: Provided, that the said company shall in no case be required to make, or cause to be made, more than one causeway through each plantation or lot of land for the accommodation of any one person owning or possessing land through which the said railroad may pass; and where any public road shall cross such railroad, the person owning or possessing land through which the said public road may pass shall not be entitled to require the company to erect or keep in repair any causeway or bridge for the accommodation of the occupant of said land." It will be noticed that that section applies to the construction of a railroad. It is questionable whether a bill in equity would lie after the lapse of so many years, and acquiescence by the complainant in the use of a public road which it is admitted gave him the very best kind of a crossing. See Dimmick v. D., L. & W. R. R. Co., 180 Pa. 468, and Green v. B. & O. R. R. Co., 245 Pa. 35. But did the act ever apply to this case? The proviso is that where a public road crosses a railroad, the person owning the land through which the public road passes is not entitled to a causeway. The land owner must use the public road. The Act of 1849, at the time of the railroad's construction and for all these years, has never applied to the present case. The argument of the learned counsel for the complainant is, as we understand it, "that the crossing of the public highway and the railroad be regarded in its true aspect as a dual arrangement. 1. As a purely highway crossing. 2. As plaintiff's private crossing.

"When the public crossing was barricaded, the effect was that plaintiff's private crossing was barricaded. The right of the Public Service Commission to order the public highway crossing barricaded is beyond question, but the right of the Public Service Commission to interfere with, obstruct or barricade a private crossing is questioned. If the Public Service Commission has no jurisdiction over private crossings, it necessarily follows that they have no right to obstruct such a crossing." The learned counsel in support of his position cites the Green Case, supra. In that case the railroad company had condemned plaintiff's land and had constructed a farm crossing. It was used by plaintiff and his predecessors in time for seventeen years. When the railroad company, for purposes of its own, removed the crossing and refused to rebuild it, the railroad company conceded plaintiff's right to the crossing; conceded that it was liable to damages, but denied that it could be compelled to restore the crossing. Mr. Justice Stewart, on page 39, said: "The right of these plaintiffs in the crossing was the gift of the State, and no power but that of the State could deprive them of it. The State had delegated to the defendant company its power in this regard, to be exercised only, however, in the way prescribed. By the 9th section of the Act of June 7, 1901, P. L. 531, the power is given to railroad companies to discontinue and remove private cross-

ings under prescribed conditions; but the removal and discontinuance of the plaintiffs' crossing was not affected pursuant to any law or agreeably to any established or pretended right." The learned Justice concedes that the plaintiffs' right could be taken away by proceedings under the Act of 1901. That is to say, it was not so vested that it could not be divested by the State acting under that act. In the present case the State acted through the Public Service Commission, under the Act of 1913, in improving the public highway, and incidentally took away that which had exempted the railroad company from any obligation to make a causeway when it built its road. That action of the Public Service Commission cannot now, after the lapse of so many years, create a condition which would bring the defendant company within the provisions of the Act of 1849. We have examined the case of Williams v. D., L. & W. R. R. Co., 255 Pa. 133, and the other cases cited, but, in our judgment, they throw little light on the present question. All that we now decide is that the complainant is not entitled to a remedy in equity under the Act of 1849. Whether the railroad company is liable to the complainant in an action at law or whether he can be compensated under the Public Service Act is not before us.

And now, Dec. 10, 1928, this cause came on to be heard at this term upon defendant's demurrer, and upon consideration thereof it is ordered, adjudged and decreed that all the causes of defendant's demurrer quoted above be allowed and that complainant's bill be dismissed, with costs.

The prothonotary will enter this decree nisi and give notice of same to parties or their counsel, and if no exceptions are filed within ten days, this decree shall be entered by him as a final decree.

From Henry D. Maxwell, Easton, Pa.