# Pittsburg, Shawmut & Northern Railroad Company, Appellant, *v.* Keating & Smethport Railroad Company.

*Railroads—Crossing agreement—Gauge—Additional tracks—Acts of April 4, 1868, P. L. 62, May 13, 1876, P. L. 157, and March 18, 1875, P. L. 28.*

1. Where a railroad company permits another railroad company to cross its tracks, but reserves to itself the right to lay additional tracks from time to time across the tracks of the other railroad, it may thereafter lay an additional track at the crossing in question so as to secure a standard gauge in addition to the narrow gauge of its original construction.

2. Where the charter of a railroad company incorporated in 1880, shows that the road did not exceed fifteen miles in length and also shows a subscription of $2,000 per mile and payment of ten per cent thereof, it will be presumed that the railroad company was organized

under the general railroad Act of April 4, 1868, P. L. 62, as amended by the Act of May 13, 1876, P. L. 157, and not under the Act of March 18, 1875, P. L. 28, relating to narrow gauge railroads, although the railroad was actually built with a gauge of only three feet.

. 3. There is nothing in the acts of 1868 and 1876, which requires the gauge of a railroad to be stated in the certificate of incorporation, and if a gauge is stated, it may be treated as surplusage.

4. Irregularities in the legal reorganization of a railroad company cannot be attacked in a collateral proceeding, such as a suit between two railroad companies as to a crossing at grade.

Argued May 16, 1911. Appeal, No. 120, Jan. T., 1911, by plaintiff, from decree of C. P. McKean Co., June T., 1905, No. 1, dismissing bill in equity in case of Pittsburg, Shawmut & Northern Railroad Company v. Keating & Smethport Railroad Company et al. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. ·Affirmed.

Bill in equity for an injunction.

ORMEROD, P. J., specially presiding, filed the following opinion:

This is a bill in equity instituted by the plaintiff to restrain the defendant from laying additional rails across the plaintiff's road for the purpose of changing the said crossing from a narrow gauge to a standard gauge, and from operating the same as a standard gauge crossing.

This bill was filed April 25, 1905. Proceedings were had thereon which resulted in the continuation of the preliminary injunction granted, until final hearing. No further steps were taken until the final hearing which began in July, 1910.

The rights of the plaintiff company were acquired through the merger and consolidation of the Mt. Jewett, Clermont & Northern Railroad Company, with other roads, by virtue of an agreement dated July 13, 1899, under the name of The Pittsburg, Shawmut & Northern Railroad Company.

The rights of the defendant were acquired as follows: In the year 1880, the Bradford, Bordell & Smethport

Railroad Company was incorporated under the general railroad laws of Pennsylvania as a railroad less than fifteen miles in length, and constructed and operated through the borough of Smethport and along the point in controversy. Its railroad rights, etc., were leased to the Bradford, Bordell & Kinzua Railroad Company, a narrow gauge road by lease dated January 1, 1881. Following the lease a mortgage was given which by the corporate action of both the Bradford, Bordell & Smethport and the Bradford, Bordell & Kinzua, became a lien upon all the rights and franchises, property of both these railroads and upon all the property, etc., that might be thereafter acquired.

Mortgage foreclosure proceedings were had upon this mortgage and George L. Roberts appointed receiver.

In 1891, subject to the lease of the Bradford, Bordell & Smethport Railroad Company, and the Bradford, Bordell & Kinzua Railroad Company, a sale was made on a fi. fa. of the railroad and property of the Bradford, Bordell & Smethport Railroad Company, subject, however, to a lien of the mortgage which was prior to the lien of judgment, the mortgage having been given in June, 1882, and the judgment obtained and entered in 1891.

A few months afterwards in 1892, in consummation of the mortgage foreclosure proceedings, George Roberts sold all of the property, rights, franchises, etc., upon which the said mortgage was lien, to H. K. Pomeroy, et al., who organized the company under the Bradford, Bordell & Kinzua Railroad Company. In 1903, a judicial sale of the Bradford, Bordell & Kinzua Railroad Company was had and the purchasers thereof reorganized the same under the style of the Buffalo, Bradford & Kane Railroad Company. Subsequently the Buffalo, Bradford & Kane Railroad Company entered into a lease with the Keating & Smethport Railroad Company whereby the Keating & Smethport Railroad Company, a standard gauge railroad company has been and is now operating a railroad of the Buffalo, Bradford & Kane Railroad Company.

In May, 1899, Mt. Jewett, Clermont & Northern Rail-

road Company, whose rights were afterwards conveyed to the Pittsburg, Shawmut & Northern Railroad Company, while constructing their railroad, attempted to cross the road of the Bradford, Bordell & Kinzua Railroad Company at grade, and the point in controversy. And by an agreement made May 25, 1899, between the Bradford, Bordell & Kinzua Railroad Company, as parties of the first part, and the Mt. Jewett, Clermont & Northern Railroad Company, as parties of the second part, marked as defendant's exhibit No. 10, the said Mt. Jewett, Clermont & Northern Railroad Company was permitted under certain conditions and reservations on the part of the Bradford, Bordell & Kinzua Railroad Company to cross said road at grade. Said agreement provides, inter alia, as follows:

"It is expressly understood and agreed that the party of the first part hereby reserves to itself, its successors and assigns, the right to lay additional rail or track or additional tracks from time to time and at any time at its pleasure across the track of the second party aforesaid, and the said second party agrees to pay from time to time and at all times all expenses incurred by the party of the first part in laying and maintaining such additional crossing or crossings, rail, track or tracks."

The defendant contends that this bill should be dismissed and the injunction dissolved for two reasons:

1. That by the terms of the contract of May 25, 1899, they have the right to place the additional rails desired.

2. That the Bradford, Bordell & Smethport Railroad Company was incorporated under the Act of April 4, 1868, P. L. 62, and its supplement the Act of May 13, 1876, P. L. 157, and had a right to broaden its gauge.

It is conceded that at the date of the contract of May 25, 1899, the Bradford, Bordell & Smethport Railroad Company was operating its road upon the location of the point in controversy and that the Mt. Jewett, Clermont & Northern Railroad Company was constructing its railroad and was attempting to cross the Bradford, Bordell &

Kinzua Railroad and said point at grade. That the Bradford, Bordell & Kinzua Railroad Company had the prior location.

The plaintiff does not deny that the rights and franchises of the Bradford, Bordell & Kinzua Railroad Company are now vested in the Buffalo, Bradford & Kane Railroad Company, or the lease by the Buffalo, Bradford & Kane Railroad Company to the Keating & Smethport Railroad Company.

By the terms of the contract of May 25, 1899, the plaintiff obtained a right, which it is doubtful it would have acquired from the court, to cross at grade. That right it acquired on certain conditions and among them was a reservation of the right of the Bradford, Bordell & Kinzua Railroad Company to lay additional rail or tracks, "from time to time and at any time at its pleasure across the tracks of second party."

The language of this reservation is too plain, explicit and comprehensive to leave any doubt as to what was understood by the contracting parties. To deny their liability under the terms of the contract is a violation of the principles of equity.

It is contended by the plaintiff that it is not bound by the contract for the reason that it alleges that the Bradford, Bordell & Kinzua Railroad Company at the time of making the said contract had no right to the prior location, for the reason that it never had acquired the franchise of the Bradford, Bordell & Smethport Railroad Company. That after the purchase by George Roberts of the franchises of the Bradford, Bordell & Smethport Railroad Company no reorganization of said road was had as required by act of assembly and that the title to said franchise, etc., is now in George Roberts as receiver of the Bradford, Bordell & Kinzua Railroad Company.

While it does not appear that any proceedings to reorganize the said Bradford, Bordell & Smethport Railroad Company were taken by said George Roberts as receiver, it does appear that by foreclosure proceedings upon a

mortgage executed and recorded nine years prior to the date of the judgment upon which the sale of 1891 was effected, the properties, rights, franchises, etc., of the Bradford, Bordell & Kinzua Railroad Company, and the Bradford, Bordell & Smethport Railroad Company, were sold by George Roberts as special master to H. K. Pomeroy et al., who did proceed to reorganize said road as the Bradford, Bordell & Kinzua Railroad Company, and that in the deed to said Pomeroy et al., all rights acquired by the said George Roberts as receiver for the Bradford, Bordell & Kinzua Railroad Company at said sale in 1891, was conveyed.

It was in pursuance of this reorganization that the Bradford, Bordell & Kinzua Railroad Company was operating said road when the contract of May 25, 1899, was entered into. Whether there were any irregularities in the said reorganization, is not a matter to concern the plaintiff. It cannot be permitted to prove in a collateral proceeding, that a condition precedent to its full corporate existence had not been complied with. It was operating the road as a de facto corporation, and when the state does not interfere, the plaintiff cannot question its ability to make the contract between them: Com. v. Central Passenger Ry. Co., 52 Pa. 506; Dyer v. Walker, 40 Pa. 157; Spahr v. Bank, 94 Pa. 429.

It is also contended by the plaintiff that the Bradford, Bordell & Smethport Railroad Company, having been chartered to build a railroad with a gauge not exceeding three feet, and that having built and operated a railroad of a gauge of three feet, it has no power to widen the gauge, and cites the Western N. Y. & Penna. Ry. Co. v. Ry. Co., 193 Pa. 127.

It becomes material then to determine under which act said road is incorporated.

An examination of the article of association shows that it was incorporated under the provisions of the act of April 4, 1868.

There is nothing in the provisions of this act which re-

quires the incorporators to set forth the width of the proposed road but provides, inter alia, that the capital stock shall be at least $10,000 per mile.

As before stated the articles of association set forth that it was chartered under the act of 1868. This act embraced all kinds of roads; it however permitted the incorporation of a road only upon a capital of $10,000 per mile, of which $9,000 per mile must have been subscribed and ten per cent paid in cash as a condition precedent to incorporation. Without compliance with this condition precedent no road could be chartered. But these conditions were modified by two acts of assembly. One was the Act of May 13, 1876, P. L. 157, by which a road not exceeding fifteen miles in length could be chartered upon the subscription of $2,000 per mile and payment of ten per cent thereof.

As the Bradford, Bordell & Smethport Railroad was but ten miles long and was chartered in 1880, it availed itself of this modification, and although there was a capital of $10,000 per mile, there was a subscription of but $2,000 per mile.

The other modification of the conditions prescribed by the act of 1868 was by the provision of the Act of March 18, 1875, P. L. 28, that modification applied only to a case where a road having a gauge not exceeding three feet should by its incorporation seek to avail itself of its provision. It provides, "Whenever any number of citizens not less than nine may be desirous of forming a company for a road having a gauge not exceeding three feet, they may state in the article of association which they are required to make, and sign the capital stock of the company and $6,000 per mile for every mile of road contemplated to be constructed and the said article may be filed and recorded when $3,000 per mile is subscribed and ten per cent paid," etc.

In order to establish the fact that the road in controversy was chartered under the act of 1875, it would be necessary to show that it availed itself of the provisions

of that act and this could only be shown by the articles of incorporation fixing the amount of capital stock at $6,000 per mile and $3,000 per mile subscribed, under the provisions of the act.

There is nothing in the charter which would indicate that the incorporators were attempting to incorporate under the provisions of that act. But it clearly shows that they were incorporating under the provisions of the act of 1868, and its supplement of 1876. This being established they then come under the provisions of the Act of April 11, 1853, P. L. 366, which authorized railroad companies theretofore and thereafter to construct or change their gauge to such width as the directors may deem expedient. It is true that in the articles of association of the Bradford, Bordell & Smethport Railroad Company it is stated that the gauge should not exceed three feet, but if incorporated under the act of 1868, it was not necessary to state the gauge of the road and it may be treated as mere surplusage.

The case of the Western N. Y. & Penna. Ry. Co. v. Ry. Co., 193 Pa. 127, does not rule this case as claimed by the plaintiff. In that case, the Olean, Bradford & Warren Railroad Company was a narrow gauge railroad incorporated under the act of 1875. The article of association shows that $3,000 per mile has been subscribed and ten per cent thereof paid. And they also show that the length of the road was to be fifty miles and the capital stock to be $6,000 per mile, which fully complies in every respect with the act of 1875.

That the proposed construction of the crossing is practical and safe and the best known in railroading is substantially uncontradicted in this case.

We do not think that the legislation or authorities bearing upon the question of overhead or under grade crossing have any application in this case. There are no pleadings and no issue raised which in any way relates to this question and upon which any adjudication by this court could rest.

We are of the opinion that under all the evidence in this case the plaintiff's bill should be dismissed and the injunction dissolved.

*Error assigned* was decree dismissing the bill.

*John G. Johnson,* with him *Edwin E. Tait, Edgar W. Tait* and *Sheridan Gorton,* for appellants.—A railroad, under the narrow gauge class of the act of 1875, cannot broaden its narrow gauge crossing across another railroad to a standard gauge crossing: Western N. Y. & Penna. Ry. Co. v. Ry. Co., 193 Pa. 127.

*Fred D. Gallup,* with him *Thomas H. Murray* and *Claude W. Shattuck,* for appellee.

Per Curiam, July 6, 1911:

The decree dissolving the preliminary injunction and dismissing the bill is affirmed with costs, for the reasons stated in the opinion of Judge Ormerod, specially presiding.