# William Marlor, Appellant, *v.* Philadelphia, Wilmington & Baltimore R. R.

*Railroads—Widening roadbed — Condemnation proceedings—Dwelling house—Act of March* 17, 1869.

Under the act of March 17, 1869, P. L. 12, a railroad company incorporated prior to the passage of the general railroad law of February 19, 1849, P. L. 83, has authority, in proceedings to widen its road, to condemn land upon which a dwelling house is erected.

Not decided whether the act of March 17, 1869, P. L. 12, applies to companies chartered under the act of February 19, 1849.

Argued Feb. 14, 1895. Appeal, No. 116, Jan. T., 1895, by plaintiff, from decree of C. P. Del. Co., Dec. T., 1891, No. 2, dismissing bill in equity. Before STERRETT, C. J., McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Bill in equity to restrain defendants from condemning a dwelling house.

The case was referred to John B. Hannum, Esq., as master, who reported the facts to be as follows:

"1. That William Marlor, the plaintiff, at the time of the filing of the bill, was seized in fee of a certain lot of ground, situate on the west side of Madison street, in the city of Chester, in the county of Delaware, Pennsylvania; bounded, etc.

"2. That erected on said lot was a two-story frame dwelling house, thirty feet in length by fourteen feet in width, with two-story back buildings; also a two-story frame store building, seventeen feet front by thirty feet deep, with two-story back buildings; also a one-story frame store building, twelve feet front. These buildings all adjoin, but there is no communication between the cellars, although there is a communication between all the buildings above ground.

"3. That the southernmost building, and the second story of the middle building, is used by the plaintiff and his family as a dwelling house, the lower part of the middle building being used by the plaintiff's wife as a store. The one-story building at present is not used.

"4. That the defendant company is a corporation incorporated by the provisions of the acts of assembly of Pennsylvania, approved April 2, 1831, entitled, 'An act authorizing the governor to incorporate the Philadelphia and Delaware County and Southwark Railroad Companies;' and March 14, 1836, entitled, 'An act supplementary to the act entitled, "An act authorizing the governor to incorporate the Philadelphia and Delaware and Southwark Railroad Companies," passed the second day of April, Anno Domini One Thousand Eight Hundred and Thirty-one.'

"5. That at a meeting of the board of directors of the defendant company, held at the office of the company, in the city of Philadelphia, on the 26th day of March, 1890, the following resolution was adopted : 'Resolved, that the plan submitted by the chief engineer, showing the proposed widening and improvement of the railroad and station grounds in the city of Chester, Pennsylvania, be and the same is hereby approved; and that the proper officers are hereby authorized to acquire for this company, by purchase or by process of condemnation, the real estate required for said widening and improvements,' as per certified copy of said resolution and plan, hereto annexed and made a part of this report.

"6. That by virtue of the authority of its charter and the act of assembly approved March 17, 1869, entitled, 'An act to enable railroad, canal and slack-water navigation companies to straighten, widen, deepen and otherwise improve their lines of railroads, canals and slack-water navigation, and the bridges, aqueducts, piers and structures thereof,' and the foregoing resolution and plan, the said defendant company is proceeding to take and occupy the said premises of the plaintiff for railroad purposes, in the widening, straightening and improving of its line of railroad through the city of Chester.

"7. That the said appropriation was made by the defendant company under its alleged power of eminent domain, and is without the consent of the plaintiff; and that on November 2, 1891, the said defendant company filed a bond, in the sum of twelve thousand dollars, in the court of common pleas of Delaware county, with security approved by the court, to secure to the plaintiff such damages as he might be entitled to by reason of the taking of his said premises by said company, said bond

being given in accordance with the provisions of the second section of the act of March 17, 1869; and that the said defendant company is proceeding to condemn the said premises under the provisions of the said act of March 17, 1869.

" 8. That in order to widen the road of the defendant company, in accordance with the plan referred to in the resolution of March 26, 1890, it is necessary that the said railroad company should take all the land of the said plaintiff described in the deed of John Marlor et ux., and the buildings thereon erected."

The master recommended that the bill should be dismissed at the cost of the plaintiff.

Exceptions to the master's report were dismissed by the court, CLAYTON, P. J., filing the following opinion :

" The bill alleges that the defendant, in proceedings to widen its road, is about to condemn the land upon which his dwelling house stands.

" The plaintiff claims that his dwelling is exempt from condemnation for railroad purposes, under the 10th section of the act of 1849, P. L. 83. This act is known as the general railroad act, and applies to all railroads chartered under it since its passage.

" The answer admits the proposed condemnation, but claims the right of the defendant's charter, by special act of assembly of April 2, 1831, P. L. 353, and its supplement of March 14, 1836, P. L. 86, to take a dwelling house if necessary, after securing to the plaintiff full compensation. The company defendant further sets up the act of 1869, P. L, 12, as extending its chartered privilege to the same right it had under its original charter, whenever it became necessary, for public convenience, to widen its road.

" The issue is therefore narrowed down to the following question : Is the act of 1869 to be read as a supplement to all the railroad charters of the state, and to be construed as applying to each charter ? or is it to be read as only a supplement to the act of 1849 (the general railroad law) ? It will be observed that the act itself contains no repealing clause, nor does it call itself a supplement to a former law. It gives, in general terms, the absolute right to any railroad, whenever public necessity shall require it, to widen any such road, and to take, in addi-

tion to its original location, as much adjoining land as may be necessary. It does not restrict the companies from taking lands occupied by dwelling houses. All it provides for is that adequate security shall be first given. The only reference to the act of 1849 is, that the damages shall be ascertained and paid in the manner provided by the 11th section of the act of 1849.

" We are of opinion that the act of 1869 is to be read as a supplement to all charters granted by special laws before the general act of 1849. We decline to pass upon the question whether, as to charters under the act of 1849, it gives any additional powers.

" We can see some good reasons why the act of 1869 should be construed as an independent law, giving to all railroads the power, in widening their roads, to take, if necessary, the land of a dwelling house. When originally opened, the company could easily avoid dwelling houses, but when a road of a single track was opened some sixty years ago, making two trips in twenty-four hours through a sparsely populated country, and by the outer suburbs of villages which have since become large cities, it is not difficult to understand why the legislature saw proper, in its wisdom, to grant the right to take the land of a dwelling house, which had been erected, perhaps, since the location of the road.

" As the strength of a chain is its weakest link, so the capacity of a highway is its narrowest part. What advantage will the public receive by widening this road from Philadelphia to Chester, and from Chester to Baltimore, if it must be confined to a single track in Chester? It is quite possible that for this and other reasons, the legislature intended the act of 1869 as an independent law, granting the commonwealth's right of eminent domain to all railroads, however chartered, where public necessity requires a widening of the roadbed. We, however, do not deem it necessary to pass upon this part of the case.

" In the case of Stahl v. The Penna. R. R., 155 Pa. 309, the Supreme Court barely touch the issue presented in this case. Using the language quoted by the lower court in that case, we do not think this is a proper case for an injunction, but a clear case for damages. The plaintiff cannot be condemned for defending his dwelling house, however humble, and when we

consider the great advantage to the defendant of having this important question settled, we think it a proper case for a division of the costs.

" Let the exceptions be dismissed and report of the master be confirmed, costs to be divided."

*Error assigned,* among others, was (4) decree, dismissing bill.

*W. B. Broomall,* for appellant.—The railroad legislation of the state has generally protected churches, graveyards and dwelling houses from the exercise of the power of eminent domain: Act of April 2, 1831, sec. 12, P. L. 379, incorporating the Cumberland Valley R. R.; act of April 2, 1832, sec. 3, P. L. 366, incorporating the Roush Creek R. R.; act of April 2, 1831, sec. 3, P. L. 363, incorporating the Swatara & Good-Spring Creek R. R.; act of April 1, 1831, sec. 12, P. L. 332, incorporating Fishing Creek R. R.; act of March 30, 1831, sec. 21, P. L. 259, incorporating Lorberry Creek R. R.; act of March 21, 1831, sec. 11, P. L. 165, incorporating Little Schuylkill & Susquehanna R. R.; act of March 18, 1831, P. L. 151, incorporating the Washington & Pittsburg R. R.; act of Feb. 17, 1831, sec. 12, P. L. 60, incorporating the Philadelphia, Germantown & Norristown R. R.; act of June 9, 1832, sec. 10, P. L. 569, incorporating the Strassburg R. R.; act of April 7, 1832, sec. 12, P. L. 349, incorporating Norristown, Berks & Lehigh R. R.; act of May 5, 1832, sec. 3, P. L. 502, regulating lateral railroads; act of April 6, 1832, sec. 12, P. L. 300, incorporating the Adams County R. R.; act of March 14, 1832, sec. 12, P. L. 126, incorporating the York & Maryland Line R. R.; act of April 14, 1834, sec. 12, P. L. 420, incorporating the Muddy Branch R. R.; act of April 11, 1835, sec. 10, P. L. 180 ; act of Feb. 16, 1835, sec. 12, P. L. 29, incorporating the West Philadelphia R. R.

All corporate rights must rest upon direct grant or necessary implication. If a company claim a right to condemn a homestead, it is incumbent upon such company, in order to justify the act, to point to the plain letter of the statute, or to a statute which necessarily implies the right: Com. v. Erie & North East. R. R., 27 Pa. 339; Junction Pass. Ry. v. Williamsport Pass. Ry., 154 Pa. 116.

Where the choice or discretion to locate is conferred upon a company and it is once exercised, the power is exhausted and the location cannot be changed: Lewis on Eminent Domain, sec. 256; Shick v. Penna. R. R., 1 Pearson, 264; Neal v. Pittsburg & Connellsville R. R., 31 Pa. 19; Mine Hill & Schuylkill Haven R. R. v. Lippincott, 86 Pa. 468; Phila. & Reading R. R. Co.'s Ap., 16 W. N. C. 165.

The statute of 1869 must be construed in pari materia with the then existing railroad statutes of the state and therefore contains an exemption of a homestead: Pitts., Allegheny & Manchester Pass. Ry. Co., 1 Penny. 449; Union Canal v. O'Brien, 4 Rawle, 358; Neeld's Road, 1 Pa. 353; Keeling's Road, 59 Pa. 358; Mount Holly Paper Co.'s Ap., 99 Pa. 513; Stahl v. Pennsylvania Co., 155 Pa. 309; A. & E. Enc. of Law, vol. 23, 313; Darlington v. United States, 1 Norris, 382.

*W. Ward*, for appellee.—Land in railroad charters is taken in its technical sense and includes all structures upon it: Cleveland & Pittsburgh R. R. v. Speer, 56 Pa. 325; Brocket v. R. R., 14 Pa. 241.

As a matter of fact, however, dwelling houses have not been generally protected in railroad legislation prior to the act of 1849.

Among many, the following acts of assembly incorporating railroad companies, contain no such restrictions: act of Feb. 18, 1831, P. L. 74, incorporating the West Chester Railroad Company; act of March 30, 1831, P. L. 271, incorporating the Bald Eagle and Nittany Valley Turnpike and Railroad Co; act of April 2, 1831, P. L. 353, incorporating the defendant in this case; act of April 4, 1831, P. L. 459, incorporating the Rock Cabin and Tangascootank Railroad Co.; act of Feb., 1832, P. L. 90, incorporating the Phila. & Trenton Railroad Co.; act of March 12, 1832, P. L. 117, incorporating the Franklin Railroad Co.; act of April 4, 1833, P. L. 136, incorporating the Wyoming & Lehigh Railroad Co.; act of April 9, 1833, P. L. 420, incorporating the Susquehanna Railroad Co.; act of April 15, 1835, P. L. 302, incorporating the West Chester and Port Deposit Railroad Co.; act of April 16, 1835, P. L. 380, incorporating the Strasburg Railroad Co.; act of March 14, 1836, P. L. 91, incorporating the Warren & Pine Grove Rail-

road Co.; act of March 31, 1836, P. L. 261, incorporating the Beaver and Conneaut Railroad Co., (this exempts burial grounds and places of public worship;) act of April 4, 1837, P. L. 315, incorporating the Columbia and Maryland Line R. R. Co.; act of July 2, 1839, incorporating the Hanover & Codorus R. R. Co., P. L. 621.

Many of the canal and turnpike companies had no restriction as to dwelling houses in their charters: Brocket v. P. O. & P. R. R. Co., 14 Pa. 244.

The case of Stahl v. Pennsylvania Co., 155 Pa. 309, referred to by plaintiff's paper-book, did not relate to the taking of a dwelling house, so that the question under consideration was not before the court.

PER CURIAM, March 5, 1895:

The question involved in this case has been carefully considered and rightly decided by the learned president of the common pleas. All that is necessary to be said on the subject will be found in his clear and concise opinion sent up with the record. On that opinion we affirm the judgment.

Judgment affirmed.