# Hey, Appellant, *v.* Springfield Water Company.

*Corporations—Water companies—Merger and consolidation.*

Under the Act of April 17, 1876, sec. 5, P. L. 30, which amended the Act of April 29, 1874, sec. 23, P. L. 73, water companies, whether created before or after the act of 1876, may sell, assign and convey their franchises and property to other water companies and such property and franchises will upon such sale and assignment become vested in the purchasing company

*Corporations—Water companies—Eminent domain—Bond—Compensating owner—Equity—Injunction.*

A bill in equity to prevent a water company from appropriating the water of a stream without making or securing proper compensation to the riparian owners will be dismissed, where it appears that defendant had not appropriated any water from the stream, that there was no evidence to show that it contemplated the appropriation of water without first making or securing compensation to owners, but that on the contrary a resolution of the directors of the company showed that the company intended to proceed according to law.

A contemplated violation of law is never to be inferred without some evidence to sustain the inference.

Argued Feb. 9, 1903. Reargued April 28, 1903. Appeal, No. 166, Jan. T., 1902, by plaintiff, from decree of C. P. Delaware Co., June T., 1901, dismissing bill in equity in case of Joseph Hey et al. v. Springfield Water Company. Before MITCHELL, FELL, DEAN, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Bill in equity for an injunction.

HEMPHILL, P. J., of the 15th judicial district specially presiding, filed the following opinion:

A preliminary injunction having been granted in this case, the question now is, Shall it be made perpetual?

#### FINDINGS OF FACT.

The plaintiffs are the lessees and owners in fee of certain woolen mills and lands situate on Darby creek, with water rights appurtenant thereto.

The defendant company was duly incorporated under the laws of this state on January 4, 1886, for the purpose of sup-

plying water to the public in the township of Springfield, Delaware county, Pennsylvania, and located its pumping station on Crum creek from which it obtained ample water for the supply of said township.

Subsequently said defendant company by purchase acquired the rights, franchises and property of twelve other water companies that were chartered for the purpose of supplying the public of the following localities with water, viz : the boroughs of Clifton Heights, Ridley Park, Darby, Sharon Hill, Collingdale, Lansdowne and Eddystone, and the townships of Darby, Upper Darby, Tinicum and Ridley, all in Delaware county, and the township of Lower Merion in Montgomery county.

The water of Crum creek, being insufficient to supply the wants of this greatly enlarged territory, the defendant company have commenced the erection of a pumping station on a lot of land purchased by the Clifton Heights Water Company on January 9, 1889 (whose rights and franchises it acquired by deed, dated August 5, 1896), from Joseph P. Maris, said pumping station being located on Darby creek above the mill of the plaintiffs, and has by the following resolution, adopted at a meeting of its board of directors on June 28, 1901, signified its intention of appropriating the waters of said Darby creek, for the use of said company in supplying its enlarged territory with water : " Whereas, the needs of the Springfield Water Company for the supply of water to the public require the appropriation of the flow of the water of Darby creek at the property of this company at the intersection of State road and Darby creek, at which place this corporation proposes to erect a pumping station, reservoirs and filter basin.

" Now, therefore, on motion of Mr. Pennock, seconded by Mr. Watkins, it is resolved that under the power of eminent domain in this corporation vested, it hereby appropriates the flow of water of Darby creek, at the intersection of State road and Darby creek, subject, however, to the riparian rights of the upper riparian owners, and it hereby authorizes the officers of this company to enter into negotiations with the riparian owners of the water rights and land affected thereby for the purpose of fixing their compensation for the appropriation of said water and land, and if the said officers are unable to agree

upon a price with the said riparian owners, then they are hereby authorized and directed to begin immediate proceedings under the provisions of the act of assembly in such case made and provided, to appropriate the waters of Darby creek and its tributaries at the intersection of State road and Darby creek," etc.

Below the Hey mills on Darby creek are some seven or eight other mills, all of which use the waters of said stream for power and in their various manufacturing processes.

Considerable testimony was taken to show the great value and importance of the use of the waters of this creek to the mills along it, and the great injury that would be done them should they be deprived of its use.

This testimony, while of importance as bearing upon the question of damages, is of no importance or aid in the determination of the issue raised by this bill and answer.

### CONCLUSIONS OF LAW.

The plaintiffs have requested us to find as conclusions of law that " 1. The Springfield Water Company has no authority in law to supply water to the public outside of the limits of the township of Springfield, as they existed at the time of the incorporation of the said company. 2. The plaintiffs are entitled to have an injunction issued restraining the Springfield Water Company from appropriating any portion of the water of Darby creek or interfering with the natural flow thereof."

The answer to both of these legal propositions is dependent upon whether or not the defendant company lawfully acquired by its several purchases the rights and franchises of the twelve water companies above mentioned, for the territory it contemplates supplying is covered by their charters and its own.

The charter granted to the defendant company was for the purposes of supplying water to the public in the township of Springfield, Delaware county, and under it it was without authority to supply any district outside of said township, and the other companies whose franchises it purchased were likewise restricted to the localities named in their respective charters : Bly v. White Deer Mountain Water Company, 197 Pa. 80.

But the defendant company claims the right to supply the

enlarged territory not under its original charter, but by its purchases and consolidation of the franchises of the several companies referred to, and claims it by virtue of the provisions of the 23d section of the act of 1874, as amended by the 5th section of the act of 1876, which reads as follows : " Section 23. Any corporation created under the provisions of this act and any corporation of the classes named in the second section hereof, that is now in existence by virtue of any law of this commonwealth may reduce its capital stock or alter and change the par value of the shares thereof, by a vote of the stockholders taken in the manner and under the regulations prescribed in the eighteenth, nineteenth, twentieth, twenty-first and twenty-second sections of this act. And it shall be lawful for any corporation in the same manner to sell, assign, dispose of and convey to any corporation created under or accepting the provisions of this act, its franchises and all its property, real, personal and mixed, and thereafter such corporation shall cease to exist and the said property and franchises not inconsistent with this act, shall thereafter be vested in the corporation so purchasing as aforesaid."

The contention of the plaintiffs is that the franchises of the several companies referred to could not become vested in the defendant by its purchase, because, first, they were not existing corporations at the time of the enactment of the act of 1876, and, second, their acquisition would be inconsistent with the act of 1874 and supplements.

It will be observed that the said 23d section is composed of two paragraphs, the first conferring upon certain corporations the right to reduce their capital stock or alter and change the par value of the shares thereof, while the second authorizes certain corporations to sell, assign, dispose of and convey its franchises and property to any corporation created under or accepting the provisions of this act (1874).

Now it is in the first paragraph that the right therein conferred is restricted to corporations " now in existence," and it is a very significant fact that these restrictive words are omitted in the second paragraph, the language being, " It shall be lawful for any corporations," thus clearly indicating the intention of the legislature to confine the exercise of the right conferred by the first paragraph to those corporations then in

existence, while the power conferred by the second is author-
ized to be exercised by " any corporation."

Now as to the plaintiff's other position, that the purchases
are illegal and void, because inconsistent with the act of 1874
and supplements.   The argument is that said act and supple-
ments, when carefully examined, exhibit " a scheme of legis-
lation upon the subject of water companies, a significant
feature of which is to confine their. franchises to the locality
designated in their respective charters, and that to allow them
by implication, by purchase, to accomplish that which their
original charters would not permit would be to defeat said
scheme, and therefore be inconsistent with this (1874) act."

Even admitting the legislative scheme to have been such as
plaintiffs claim, it is as clear as the English language can
make it that it was abandoned when said 23d section was
adopted, for its second paragraph not only declares that " it
shall be lawful for any corporation in the same manner (by
vote of its stockholders) to sell, assign, dispose of and con-
vey to any corporation . . . . its franchises and all its prop-
erty, real, personal and mixed," but that " thereafter such
corporation (the vendor) shall cease to exist, and the said
property and franchises, not inconsistent with this act, shall
thereafter be vested in the corporation so purchasing as afore-
said."

Here, surely, the right and authority is given to any corpo-
ration to purchase and become vested with the property and
franchises of any other corporation, unless such sale and vest-
ing be inconsistent with this act.

" Not inconsistent with this act " is the language used and
not " not inconsistent with the entire scheme of legislation
upon the subject " of corporations.

To construe the language of the act as applicable to a scheme
of legislation such as plaintiffs claim to be exhibited by
the act of 1874 and supplements would be to render the whole
paragraph nugatory, for while it at first gives corporations the
right to purchase the franchises of other corporations, a later
sentence would prohibit the exercise of that right because in-
consistent with a scheme of legislation.

That no such " scheme of legislation " to restrict corporations
to the grants contained in their original charters is established

by the acts referred to, is made clear by an examination of the supplement to the act of 1874, approved June 13, 1883, which provides " for the improvement, amendment and alteration of the charters of corporations of the second class." What, then, is the meaning of the words " not inconsistent with this act ? " To what do they refer ?

It might be difficult to specify all the inconsistencies that the legislative mind had in view when it inserted these words or that the future might develop, but one, and perhaps the principal one they had in mind, was to prevent the consolidation by purchase of corporations chartered for entirely different objects, for article 16, section 6 of the constitution prohibits such consolidation by providing that " no corporation shall engage in any business other than that expressly authorized in its charter ; " and in conformity with this constitutional requirement the act of 1874 designates the purposes for which corporations may be formed and requires applicants for incorporation to set forth in the charter the purpose for which it is formed.

The purchases, however, made by defendant company do not violate the constitution nor are they inconsistent with the provisions of the act of 1874, because the business of those corporations was the same as that in which it was authorized to engage by its charter, viz : the supplying of water to the public.

The case upon which the plaintiffs seemed to rely, Bly v. White Deer Mt. Water Company, supra, is not in point for there the water company attempted to supply several localities for which it had no legal authority, either under its charter or by purchase.

But the continuance of the injunction is asked for upon another and additional ground, viz : to prevent the defendant company " from appropriating any portion of the flow of water of Darby creek, without making or securing proper compensation to your orators."

No evidence whatsoever was offered to show that the defendant company, either by act or word, contemplated the appropriation of the waters of said creek, without first making or securing compensations to those entitled thereto, but on the contrary its resolution of June 28, 1901, clearly indicates that it intends to proceed according to law and in the last paragraph

of its answer it avers, "that no water has as yet been taken from Darby creek and it is not intended that any water shall be diverted until an agreement is made with the plaintiffs, a bond is given to and accepted by said plaintiffs or a bond approved by the court and filed conditioned for the payment of such damages as may be lawfully ascertained."

A contemplated violation of law is never to be inferred without some evidence to sustain the inference.

Entertaining the view of the law above set forth and for the reasons given, we must dissolve the preliminary injunction heretofore issued and dismiss the bill at the cost of the plaintiffs.

*Error assigned* was the decree dismissing the bill.

*L. L. Smith*, for appellant.—The apparent purpose of the several statutes is to restrict very narrowly the functions of a water company to a limited district : Bly v. White Deer Mt. Water Co., 197 Pa. 80 ; Luzerne Water Co. v. Toby Creek Water Co., 148 Pa. 568 ; In re Union Water Co., 30 W. N. C. 371.

Water companies are quasi-public corporations and may not sell or destroy their franchises without express statutory authority : Guest v. Merion Water Co., 142 Pa. 610; Susquehanna Canal Co. v. Bonham, 9 W. & S. 27 ; Foster v. Fowler, 60 Pa. 27 ; Com. v. Punxsutawney Water Co., 197 Pa. 569; Stowe v. Citizens' Nat. Gas. Co., 23 Pa. C. C. Rep. 273 ; Beach on Corporations, sec. 361.

There is no statutory authority for the assignment of franchises of water companies : United States v. Kirby, 7 Wallace, 482; Uhler v. Moses, 200 Pa. 498 ; Whitmire v. Muncy Creek Twp., 17 Pa. Superior Ct. 399 ; United States v. Hogg, 112 Fed. Repr. 909.

The appropriation of the entire flow of a natural stream contravenes public policy and violates article 16, section 3, of the constitution : Stevenson v. Ebervale Coal Co., 201 Pa. 112.

*John G. Johnson*, with him *Edward H. Hall* and *William C. Hannis*, for appellee.

OPINION BY MR. JUSTICE DEAN, October 12, 1903 :

After argument and reargument and somewhat prolonged

deliberation a majority of the court concur in the decree entered in the court below.   While we concede that the answer to the question involved is one not easily given, yet it is very clear that by the 23d section of the act of 1874, the franchises of the twelve water companies named in the bill could, by purchase, become vested in the Springfield Water Company. Neither can it be doubted that thereby the purchasing company by that act and subsequent legislation on the same subject, acquired all the powers of the purchased companies so far as the legislature under the constitution could confer such power, even if the authority to purchase and merge such franchises struck down the whole scheme of the legislation contemplated by the act of 1874.   Once concede the legislative power, as we must, then the wisdom of its exercise in this manner is no business of ours.   We can only interpret the amendatory acts and determine how far they reach.   Up until the filing of this bill there has been no attempt by defendant to exercise its powers ; mere apprehension on part of plaintiffs is not sufficient to move a chancellor.   We can add nothing by way of demonstration to the very clear opinion of the court below.   On that opinion the decree is affirmed.