# Reeves et al., Appellants, v. Philadelphia Suburban Water Co.*

*Water companies — Public service companies — Corporations— Merger—Condemnation of land for reservoir—Private water supply—Acts of June 19, 1871, P. L. 1360; April 29, 1874, P. L. 73, and May 16, 1889, P. L. 226.*

1. A water company having the power to condemn land for reservoirs under the Act of April 29, 1874, P. L. 73, may condemn springs and small streams on the property taken.

2. The proviso in the Act of May 16, 1889, P. L. 226, that the right to appropriate water "shall not apply to private spring or private water supplies," applies only to the actual taking of a supply of water obtained by artificial means for a private purpose; it does not apply to cases where the taking of private spring or private water supplies is incidental to the construction of a reservoir.

3. One water company made up of a combination of others can supply the combined district, and this is so however the franchises of various companies may have been acquired, whether by merger, purchase or lease.

4. A water company formed by the merger of several other water companies all having the right to appropriate water, may condemn land in a district covered by one of the merged companies, although the purpose of the taking is to supply water to some other districts which have already a supply from other reservoirs.

5. The tendency of the later decisions in Pennsylvania is to construe liberally grants of power to water companies.

6. A district which was originally served by a water company which did not possess the right of eminent domain may be served by a company which does possess that right and which had leased the original company, if the service requires the lessee company to exercise its condemnatory powers.

7. A water company may condemn a dwelling house in the occupation of the owner or the curtilage appurtenant thereto.

8. A contemplated violation of a statute is not to be inferred without some evidence to sustain the inference.

9. If the purpose of condemnation by a water company is to furnish a territory beyond the charter limits of the company, that is a matter to be inquired into by the State in appropriate proceedings, and not by a bill in equity under the Act of June 19. 1871, P. L. 1360.

*For order made in the case on application for leave to appeal to the Supreme Court of United States, see 288 Pa. 418.

*Constitutional law—Title of statute—Water companies—Acts of May 20, 1921, P. L. 1010, and May 17, 1923, P. L. 251—Special legislation—Due process of law—Acts of April 13, 1905, P. L. 152, and June 7, 1907, P. L. 455.*

10. When the constitutionality of a statute is attacked, it is the duty of every judge, without regard to his opinion as to the necessity for the statute, or its wisdom, to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found impossible.

11. In determining whether the title of an act sufficiently indicates the contents of the act, the Constitution presupposes a reasonably inquiring state of mind, and such a state of mind would follow the trail indicated by the main part of the title, into the body of the act.

12. The Act of May 20, 1921, P. L. 1010, authorizing the merger of water companies and the Act of May 17, 1923, P. L. 251, authorizing the sale of the franchises and property of one water company to another, sufficiently indicate in their titles the dropping of the requirement of the previous Act of June 7, 1907, P. L. 455, that all water companies thereafter formed by merger and consolidation or thereafter purchasing the property and franchises of any other such company must accept the provisions of that act and of the Act of April 13, 1905, P. L. 152, taking away from water companies the right of eminent domain.

13. The Acts of 1921 and 1923 created no new powers, but simply removed the requirement, in the event of merger and consolidation, of surrendering powers already possessed.

14. The Acts of 1921 and 1923 cannot be attacked as unconstitutional because their titles fail to show a repeal of the Act of 1907.

15. The acts do not repeal the Act of 1907, they only enact that its provisions need not be accepted by certain corporations desiring to merge or consolidate by purchase.

16. The Acts of 1921 and 1923 are not discriminatory or class legislation violating article III, section 7, of the Constitution of Pennsylvania and the 14th Amendment of the Constitution of the United States.

*Water companies—Condemnation of water—Remedy to prevent —Proceedings by attorney general—Bill in equity under the Act of June 19, 1871, P. L. 1360.*

17. Quaere, where an attempt is made to strike down completely the charter of a water company, by restraining it from appropriating water, whether the remedy is not by proceedings by the attorney general, instead of by a bill in equity under the Act of June 19, 1871, P. L. 1360.

Argued September 29, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 259, Jan. T., 1926, by plaintiffs, from decree of C. P. Chester Co., in Equity, No. 752, Docket D., refusing preliminary injunction, in case of William H. Reeves, Jr., et al. v. Philadelphia Suburban Water Company. Affirmed.

Bill for injunction to restrain condemnation of land. Before BUTLER, P. J., and HAUSE, J.

The opinion of the Supreme Court states the facts.

Preliminary injunction refused. Plaintiffs appealed.

*Error assigned* was, inter alia, decree, quoting record.

*Lemuel B. Schofield,* with him *Walter S. Talbot,* for appellant.—Appellee cannot condemn private spring and private water supplies: Gring v. Water Co., 7 Pa. Superior Ct. 63.

Appellee has no right to condemn land in territory covered by one of the charters it has purchased to supply districts included in the charters of other companies: Jacobs v. Water Supply Co., 220 Pa. 388; Bly v. Water Co., 197 Pa. 80; Brumbaugh v. Power Co., 254 Pa. 215.

Appellee has no right to condemn private property for the purpose of supplying water to a district originally served by a company which never possessed the right of eminent domain.

Appellee cannot condemn dwelling houses or buildings of the curtilage: Damon v. R. R., 119 Pa. 287.

The Acts of May 20, 1921, P. L. 1010, and May 17, 1923, P. L. 251, are unconstitutional: Gerli v. Silk Throwing Co., 70 Pa. Superior Ct. 299; Missouri v. Lewis, 101 U. S. 22; Barbier v. Connolly, 113 U. S. 27; Kentucky R. R. Tax Cases, 115 U. S. 321; Field v. Paving Co., 194 U. S. 618.

The titles to the acts are defective: Provident Life & Trust Co. v. Hammond, 230 Pa. 407; Spector v. Ins. Co., 285 Pa. 464; Am. Trust Co. v. Kaufman, 279 Pa. 230; Union Passenger Ry. Co.'s App., 81* Pa. 91; House of Refuge v. Luzerne Co., 215 Pa. 429; Central Telegraph Co. v. Boro., 242 Pa. 597; Investors Realty Co. v. Harrisburg, 281 Pa. 200.

*A. M. Holding,* of *Holding & Harvey,* for appellee.— The condemnation of lands of appellant does not violate the proviso of the Act of 1889: Gring v. Water Co., 7 Pa. Superior Ct. 68; Sinking Spring Water Co. v. Gring, 26 Pa. 867.

Appellee has the legal right to construct, at any place within its unified district, a reservoir to impound water to furnish consumers anywhere within said district, and, therefore, has, under the Act of 1874, and its supplement, the right to condemn lands within any of its territory for the purpose: Penna. Utilities Co. v. P. S. C., 69 Pa. Superior Ct. 612; Hey v. Water Co., 207 Pa. 38; Com. v. Water Co., 225 Pa. 317; Greensburg Boro. v. Water Co., 240 Pa. 481; Jacobs v. Water Co., 220 Pa. 388; Keller v. Water Co., 161 Pa. 422.

The Act of 1923, P. L. 251, is not unconstitutional because of its title: Windsor Glass Co. v. Carnegie Co., 204 Pa. 459; Olyphant S.-D. Co. v. Boro., 196 Pa. 553; Curry v. Electric Co., 251 Pa. 344; Kulp v. P. S. C., 82 Pa. Superior Ct. 83; Tibby Bros. G. Co. v. R. R., 219 Pa. 430; Burkhard v. Water Co., 234 Pa. 41; Com. v. Snyder, 279 Pa. 234; Mauch Chunk v. McGee, 81 Pa. 433; Com. v. Lloyd, 2 Pa. Superior Ct. 6; Qualp v. Stewart Co., 266 Pa. 504; Com. v. Jones, 4 Pa. Superior Ct. 362; Com. v. Rapid Transit Co., 219 Pa. 11; Booth v. Miller, 237 Pa. 297.

The appellee may condemn dwelling houses or buildings of the curtilage.

OPINION BY MR. JUSTICE SCHAFFER, November 22, 1926:

The question we are here to determine is whether defendant water company possesses and may exercise the power of eminent domain to condemn plaintiffs' lands for the purpose of erecting a reservoir. On plaintiffs' bill for an injunction to forbid the taking, the learned court below refused the relief prayed for; and from this denial of the remedy to which they allege themselves to be entitled, plaintiffs lay before us this appeal.

The Philadelphia Suburban Water Company was formed by the merger and union of thirty-four water companies, all of them chartered prior to April 13, 1905, and all possessing the power of eminent domain. Their immediate unification was in pursuance of conveyances made October 2, 1923, under the assumed authority of the Act of May 17, 1923, P. L. 251, of all of the franchises and properties of the constituent companies to the Springfield Consolidated Water Company, whose name was thereafter changed to Philadelphia Suburban Water Company. Two other companies were subsequently leased.

Asserting that under its charter it has the power so to do, appellee seeks to build a reservoir on Pickering Creek in the County of Chester. The properties of plaintiffs lie along the stream, and the building of the reservoir to impound its waters makes necessary the appropriation of part of the lands belonging to each of them.

The territory served by the water company is in the counties of Delaware, Chester and Montgomery and comprehends the most thickly settled section adjacent to the City of Philadelphia, containing a population of more than 250,000 persons, rapidly growing in numbers, the increase amounting to approximately 25,000 each year. Defendant now supplies 51,000 customers and is receiving on an average 5,000 new patrons every year. It has three impounding reservoirs, the one in question

which it seeks to enlarge, one on Crum Creek and one on Neshaminy Creek. The consumption of water in the very near future will exceed the supply in its storage reservoirs. If it is to meet the demands of the communities which it serves with an adequate supply of pure water, it is imperative that defendant shall have additional reservoir facilities.

The right of a water company to condemn land for the purpose of building reservoirs is conferred by the general corporation Act of April 29, 1874, P. L. 73.

Appellants' first position is that their lands cannot be taken because private spring and water supplies are exempt from condemnation under the Act of May 16, 1889, P. L. 226. That act, after giving water companies the right to appropriate water, contains a proviso, which reads: "Provided, that this act shall not apply to *private spring or private water supplies.*" It may be questioned whether, in view of the facts appearing on this record, the springs and small streams on appellants' properties are private spring or water supplies within the meaning of the proviso. Without deciding that question, however, we are of the opinion that this provision does not cover the situation with which we are concerned in this case, for the reasons adverted to by Judge RICE in Gring v. Sinking Spring Water Co., 7 Pa. Superior Ct. 63, 68. That able judge said, "We may assume that they were inserted in the proviso with the intention to prevent the actual taking *of a supply of* water obtained by artificial means for a private purpose, as, for example, a well or reservoir. Whether or not they were used with the intention to prevent a taking which might work *consequential injury* to such a supply is another question, upon which we are not called to express an opinion. ......If the proviso were to be construed to include every stream from which private owners of the riparian lands draw their supply of water it would virtually nullify the grant of power contained in the purview of the act, and one or the other would have to be rejected—

a conclusion always to be avoided in the construction of statutes, if possible." Our determination is that the proviso does not apply to cases such as this, where the taking of private spring or private water supplies is incidental to the construction of a reservoir.

Appellants' second position is that defendant cannot obtain the right to condemn private property for a reservoir to supply water in districts which already have an available supply merely by buying in the charter of the company operating in the district in which the property it seeks to condemn is located. In other words, by purchasing the company which unquestionably possesses the right to condemn plaintiff's lands, defendant itself does not acquire the right to condemn them, where the purpose of the taking is to supply water to some districts which already have a supply available from other reservoirs. The supply of pure water to the public in territory thickly populated is to-day a most difficult problem, and its difficulties are bound to multiply as time goes on and population increases. Whatever may have been this court's position in regard to the water problem in previous decades, when its great importance may not have been fully realized, the tendency, as our decisions in their evolution will show, has been to broaden the view and to construe liberally grants of power to water companies, furnishing, as they do, the most essential of all public services to mankind, vital to life itself. Appellants admit in their brief that Hey v. Springfield Water Co., 207 Pa. 38, settled the question that one water company made up of a combination of others can supply the combined district, and this is so however the franchises of the various companies may have been acquired, whether by merger, purchase or lease: Gring v. Sinking Spring Water Co., 270 Pa. 232; Greensburg Borough v. Westmoreland Water Co., 240 Pa. 481. Appellants would have us now declare that, because there may be an adequate source of water supply in the Crum Creek and Neshaminy districts to fur-

nish the consumers in those territories, the reservoir on Pickering Creek may not be enlarged to aid in their supply. This overlooks the whole trend of our decisions and if adopted by us might establish a rule which would for financial or other reasons greatly hamper, indeed might prevent, water companies serving large and populous territories from carrying out their franchise obligations to the public which they were chartered to serve. Mr. Justice KEPHART, then in the Superior Court, in Pennsylvania Utilities Co. v. Public Service Commission, 69 Pa. Superior Ct. 612, spoke with prescience when he enunciated the principle covering "unified" public utility companies and the necessity for their combining in order to meet the demands of large and growing sections of the Commonwealth. We think appellants' second position is in conflict with the trend of our decisions and not well taken.

For the same reasons we are of opinion that appellants' third proposition stands upon no foundation and falls of its own weight. They contend that a district which was originally served by a water company which did not possess the right of eminent domain may not be served by a company which does possess that right and which had leased the original company, if the service requires the lessee company to exercise its condemnatory powers. To so rule would upset the unification of water companies doctrine to which we have given our assent and would lead to an utter disregard of the rights of the people in certain districts to be served with water. It would mean that if their water supply was insufficient and the company furnishing it to them was without condemnation powers they might not be able to obtain water. Under the law as it exists to-day a company which has or can acquire water may unite with another company which has too small or no supply and fill the latter's mains, so that its customers may be served. Water companies exist to supply people with water and legal

valves ought not to be interposed to prevent the free onward movement of the supply.

Appellants' fourth proposition is without substance. It is that a water company may not condemn a dwelling house in the occupation of the owner or the curtilage appurtenant thereto. It might be sufficient to say as to this that there is no such reservation of power from water companies as there was from railroad companies under the general Railroad Act of February 19, 1849, P. L. 79. Although such a condemnation was prohibited by the general Railroad Act, when the railroad widening statute was passed there was no such prohibition in it. Railroad companies in widening their roads are permitted to condemn a dwelling house in the occupation of the owner: Marlor v. Phila., Wilmington & Baltimore R. R. Co., 166 Pa. 524; Williams v. Delaware, Lackawanna & Western R. R. Co., 255 Pa. 133.

Appellant's fifth question involved as they propound it is: Can a water company with original power of eminent domain circumvent the Act of April 13, 1905, which takes away this power from such companies thereafter incorporated merely by leasing another company formed after the passage of the act and operating it as part of a general system? Appellants do not dwell upon this question in their printed brief and it was not touched upon, as we recall, in oral argument. It is answered adversely to appellants by the cases of Hey v. Springfield Water Co., 207 Pa. 38, and Gring v. Sinking Spring Water Co., 270 Pa. 232. Furthermore, if the purpose of the condemnation was to furnish a territory beyond the charter limits of the lessee company, as appellants intimate, that is a matter to be inquired into by the State in appropriate proceedings, and not by a bill in equity under the Act of 1871 at the instance of a private person: Croyle v. Johnstown Water Co., 259 Pa. 484.

We now come to the real question in the case, the one most fully argued at bar, and upon which appellants

mainly rely: Are the Acts of May 20, 1921, P. L. 1010, authorizing the merger of water companies, and of May 17, 1923, P. L. 251, authorizing the sale of the franchises and property of one water company to another, constitutional? It is argued that their titles are defective in that no notice is given of the dropping of the requirement in the Water Company Merger Act of June 7, 1907, P. L. 455, that all water companies thereafter formed by merger and consolidation or thereafter purchasing the property and franchises of any other such company must accept the provisions of that act and of the Act of April 13, 1905, P. L. 152. The latter act provided that the right of eminent domain as respects the appropriation of streams, rivers or waters or the land covered thereby should not be exercised by water companies thereafter incorporated under any law.

In considering the question of the constitutionality of these two statutes on the grounds of attack laid by appellants, it is important to take into account, first, that all the thirty-four companies which combined to make up the defendant company did possess the right of eminent domain, having been incorporated prior to April 13, 1905. No new powers in this respect were conferred on them by the Acts of 1921 and 1923. They lost this power only if they merged or consolidated under the Act of 1907. The two acts in question prescribe, in the event that they shall merge or consolidate by purchase, that one of the details required of them by the Act of 1907 need not be carried out,—their acceptance of the two prior Acts of 1905 and 1907. The fallacy which runs through appellants' argument is, that they, as it were, subconsciously treat the proposition of unconstitutionality as though the two acts which they attack create new and unheard-of powers in the defendant, whereas all that has been done is to remove the requirement, in the event of merger and consolidation, of surrendering powers already possessed.

It would also seem that appellants have approached the consideration of the question of unconstitutionality from a distorted angle and not along the line of view which we have laid down for determining the validity of legislative enactments when they are ranged with the Constitution. The presumptions,—state of mind as it were,—should favor constitutionality. "A construction that invalidates an act must, under all circumstances, be rejected for one, supported by reason, which will not conflict with the Constitution; for a court is obliged to resolve every doubt in favor of the validity of legislation, and can never accept as correct a meaning which conflicts with the organic law if such a course can reasonably be avoided": Com. v. Benn, 284 Pa. 421, 442. "When the constitutionality of an act of assembly is attacked, it is the duty of every judge,—without regard to his opinion as to the necessity for the statute, or its wisdom,—to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible": Com. v. Snyder, 279 Pa. 234, 239. With this principle to guide our view from the section of the Constitution invoked, to the two statutes said to cross it, what develops along the line of our mental vision? The Constitution says, article III, section 3, "No bill......shall be passed containing more than one *subject,* which shall be clearly expressed in its title." The subject referred to is, *"the real subject"*: Com. v. Snyder, 279 Pa. 234, 242. Now what are the real subjects of the two acts in question? Of the one, it is the merger and consolidation of water companies; and of the other it is the authorization of the sale and conveyance of the franchises and property of a water company to another water company. Just how these things shall be done, what other statutes shall be followed or accepted are mere details of the real subject of each act. The title of the Act of 1921 is "An act authorizing the merger and consolidation of water or water

power companies organized prior to the first day of April one thousand nine hundred and five, and providing the manner in which such merger shall be effected" and of the Act of 1923, "An act authorizing the sale, assignment, disposition, transfer, and conveyance of the franchises and of the property, real, personal and mixed, of any water or power water companies organized prior to the first day of April, one thousand nine hundred and five, to another water or water power company, also organized prior to the first day of April, one thousand nine hundred and five; and providing the manner in which said sale and purchase shall be effected."   The Constitution presupposes a reasonably inquiring state of mind, and such a state of mind would follow the trail indicated by the main part of the titles, into the body of the acts. These titles would be good without the words "and providing the manner," etc.   The title "An act concerning townships" is good to cover all legislation affecting townships, and additional words after the word "townships" do not diminish the scope of the title: Blanchard v. McDonnell, 286 Pa. 283.   The words "and providing the manner" in the one act "in which such merger shall be effected" and in the other "in which said sale and purchase shall be effected" are words of broad signification when coupled with the subjects of the acts.   The words "and regulating the manner of sentencing convicts" in the title of an act which specified its subject were held not to affect the statute but "were sufficiently broad to cover not only the procedure in sentencing, but also the substance of the sentence": Com. ex rel. v. McKenty, 52 Pa. Superior Ct. 332.   Approved in Com. v. Sweeney, 281 Pa. 557.

Appellants' main reliance for their contention that the acts are unconstitutional because of a defect in title is based upon the cases of Strain v. Kern, 277 Pa. 209, and Spector v. Northwestern Ins. Co., 285 Pa. 464, in the former of which we held unconstitutional a section of the Act of June 7, 1917, P. L. 447, relating to the admin-

istration and distribution of decedents' estates, which provided that an executor or administrator could bring an action for personal injuries to the decedent where such action had not been started during his lifetime for the reason that "no one would expect to find in a Fiduciaries Act, so radical a departure from unrepealed prior statutes dealing with procedure in common law actions." In what more appropriate place than in a merger and consolidation act would one expect to find the details of how such a merger or consolidation was to be affected? In the second case, Spector v. Northwestern Ins. Co., we determined in an insurance act the scope of the initial words in the title of which were limited by subsequent phrases that there could not be incorporated a section authorizing service on foreign insurance companies not within the jurisdiction of the court, by serving the insurance commissioner. This case has no pertinence to the one at bar. We are not here dealing, as we were in that proceeding, with a broad title which had limiting terms. As was pointed out by the court below, if the acts in question are to be held unconstitutional because of defective titles then it might be concluded that the general Corporation Act of April 29, 1874, P. L. 73, is likewise unconstitutional. Its title is "An act to provide for the incorporation and regulation of certain corporations." This title gives no specific notice that the power of eminent domain is conferred on certain corporations in the body of the act nor was it requisite that it should. The title covers the whole field of incorporation and regulation just as the titles to the acts before us cover the entire field of merger and consolidation by purchase. "All necessary or appropriate details to carry out the purpose of the statute there found will be treated as within the title": Com. v. Snyder, 279 Pa. 234, 242. As to the further proposition that the Acts of 1921 and 1923 in effect repeal the Act of 1907 and as there is no notice in their titles of this repealer, the act is unconstitutional, it may

be said that perhaps the legislature did not wish to repeal the Act of 1907. The acts we are considering do not say it is repealed, they only provide that its provisions need not be accepted by certain corporations desiring to merge or consolidate by purchase. It may be that the legislature at another session would provide that the terms of this act shall be accepted. An act is not to be held unconstitutional because it fails to mention that a certain other act is repealed: Com. v. Moir, 199 Pa. 535, 551; Com. v. Friebertshauser, 263 Pa. 211, 215; Lutz v. Matthews, 37 Pa. Superior Ct. 355. Our conclusion is that the acts are not unconstitutional because of defects in title.

Appellants argue before us, although apparently they did not in the court below, that the Acts of 1921 and 1923 are discriminatory and violate article III, section 7, of the Constitution of Pennsylvania and the 14th Amendment to the Constitution of the United States because they are special or class legislation and "deny to certain citizens, in this case corporations, the equal protection of the laws." The argument is based upon the fact that the Act of April 13, 1905, denied to water companies thereafter incorporated the right of eminent domain, and the Act of 1907 provided as to those thereafter merging or consolidating by purchase that they must accept the provisions of the Act of 1905, whereas the Acts of 1921 and 1923 apply to water companies organized prior to April 1, 1905. It is contended that this establishes arbitrarily two classes of water companies the privileges of which are different, those created prior to April 1, 1905, and those chartered between that date and April 13th. It is urged upon us that this is class legislation forbidden by the Constitution because it creates the two classes of water companies. All companies organized after April 13, 1905, are without the power of eminent domain. It is only those organized prior to that date which possess it. The law says to such of them as were in existence before April 1, 1905,

you may merge or consolidate and retain the power; to those (if any there be, and as to this the record is silent) chartered between April 1st, and April 13th, you may not merge or consolidate by purchase without surrendering the power. The law does not require them to merge or consolidate, their so doing would be their own voluntary act. We fail to see how this makes the acts in question class legislation or denies to such corporations, created in the short period referred to, the equal *protection* of the laws. The Commonwealth has the undoubted right to say what corporations which it has created may merge or consolidate.

Lest it might be thought by our disposition of the pending controversy that we approve the remedy invoked by appellants, we wish to say that that question has not been considered by us. Owing to the importance of the case, we have determined it on the record as it stands, and have answered all the questions which appellants presented to us. It is at least debatable, whether, as the effect of their bill might be to strike down completely the charter of defendant, their remedy should have been not under the Act of June 19, 1871, P. L. 1360, but by a proceeding at the instance of the attorney general: Gring v. Sinking Spring Water Co., 270 Pa. 232.

The assignments of error are overruled and the decree of the court below affirmed at appellants' cost.