## Beckman, Secretary of Banking, v. Lansberry

*John E. Cupp*, for plaintiff.

*Humes & Baird*, for defendant.

LARRABEE, P. J., August 22, 1939.—The Secretary of Banking of the Commonwealth of Pennsylvania, acting as receiver of the Snow Shoe Bank of Snow Shoe, Pa., brought an action of assumpsit against Blake E. Lansberry, seeking to recover the amount of an assessment of the par value of shares of stock in said bank held by Lansberry, in the nature of double liability.

It appears that the bank was closed on June 10, 1931, by the Secretary of Banking, who proceeded to take custody of the bank and found it was insolvent. In liquidating its affairs he decided to enforce the individual liability of the bank's shareholders and made written demand on defendant for a sum equal to the par value of his shares.

Plaintiff based his cause of action on the provisions of the Act of May 13, 1876, P. L. 161, its amendments and supplements, which provides in section 5:

"The shareholders of any corporation formed under this act, shall be individually responsible, equally and ratably, but not one for the other, for all contracts, debts and engagements of such corporation to the amount of their stock therein at the par value thereof in addition to the par value of such shares."

Defendant filed a statutory demurrer to plaintiff's statement, in which he claims that the said Act of May 13, 1876, supra, is unconstitutional for the reason the title fails to give notice of the right to impose an assessment in event of a bank's insolvency; also, for the further reason that the stockholders in other corporations organized under the laws of Pennsylvania are not liable to such assessments; and that this act was repealed by the provisions of the Banking Code of May 15, 1933, P. L. 624, art. XVI, sec. 1602. In support of his position, defendant relies chiefly on the decision in Gordon, etc., v. Wenderoth et al., 32 D. & C. 637.

Upon examining the title to said Act of 1876, we find it reads as follows:

"For the incorporation and regulation of banks of discount and deposit."

Defendant argues that the title to said act and the contents thereof fail to comply with the terms of article III, sec. 3, of the Constitution of Pennsylvania, which provides:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

The appellate courts of Pennsylvania, in construing this provision of the Constitution, have laid down the guiding principle as set forth in Commonwealth v. Budd Wheel Co., 290 Pa. 380, 386:

"Few, if any of the provisions of the Constitution, are as often invoked as this one, and its scope and effect should now be fairly well settled. In Reeves v. Phila. Suburban Water Co., 287 Pa. 376, 387, after reviewing a number of the more recent decisions, we said: 'The Constitution presupposes a reasonably inquiring state of mind, and such a state of mind would follow the trail indicated by the main part of the titles, into the body of the acts.' "

In In re Sugar Notch Borough, 192 Pa. 349, the Supreme Court said:

"The title of the Act of April 3, 1851, P. L. 320, is 'An act regulating boroughs.' Nothing more general and comprehensive on that subject could have been devised. It included the entire range of borough affairs so far as they were within legislative control. When, therefore, the Act of June 11, 1879, P. L. 150, was entitled 'A supplement to an act for the regulation of boroughs,' it was so far as the title was concerned as broad as the original act. It comprehended everything relating to boroughs that was or could be the subject of legislative action."

And in Specktor et al. v. Hanover Fire Ins. Co., 295 Pa. 390, 393, the appellate court said:

"The Constitution does not require the title of a statute to be an index of its contents, but 'presupposes a reasonably inquiring state of mind . . . [which will] follow

the trail indicated by the main part of the titles, into the body of the acts': Reeves v. Phila. Suburban Water Co., 287 Pa. 376, 387; Com. ex rel. v. Macelwee et al., 294 Pa. 569."

In Minsinger v. Rau, 236 Pa. 327, Chief Justice Moschzisker said (p. 336) :

"A short general comprehensive title is more desirable than a long one which attempts to point out all the details of a statute." And on the same page: "A title need not be an index; it must not be misleading, but if it fairly gives notice of the subject and substance of an act, it is sufficient."

And in Soldiers & Sailors Memorial Bridge, 308 Pa. 487, the Supreme Court said (p. 490) :

". . . and an act will not be declared unconstitutional as offending section 3, of article III, 'unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill': Carr v. Aetna A. & L. Co., 64 Pa. Superior Ct., 343, 349."

And in the more recent decision in Commonwealth v. Stofchek, 322 Pa. 513, 517, it was said by Chief Justice Kephart:

"The real purpose of section 3, of article III, must be considered in answering the question raised by appellant. The provision was not intended to exercise a pedantic tyranny over the grammatical efforts of legislators, nor to place them between the horns of a constructional dilemma, namely, that the title of an act must be so general or so particularized as to include all of its subject-matter, and yet not so general as to give no indication of its purpose, nor so particular as to inferentially exclude from its scope any items inadvertently omitted. As stated in *Soldiers and Sailors Memorial Bridge,* 308 Pa. 487, citing *Carr v. Aetna A. & L. Co.,* 64 Pa. Superior Ct. 343, at 349, the provision is not applicable 'unless a substantive matter, entirely disconnected with the named legislation, is included within the folds of the bill.' It is intended to operate to exclude from the measure that which is secret

and unrelated: *Beckert v. City of Allegheny*, 85 Pa. 191. The history of this section indicates that this is its true purpose. . . . It need not be an index of the provisions, nor a synopsis of the contents: *Commonwealth v. Liveright*, 308 Pa. 35; *Carr v. Aetna A. & L. Co., supra.* It is sufficient if it give notice of their tenor to interested persons of a reasonably inquiring state of mind: *Reeves v. Phila. Suburban Water Co.*, 287 Pa. 376; *Specktor v. Hanover Fire Insurance Co.*, 295 Pa. 390; *Commonwealth v. Macelwee*, 294 Pa. 569; *Boock's Petition*, 303 Pa. 363. So long as the title indicates a general subject to which the provision involved is germane or incidental, the provision itself is sufficiently contained: *Sloan v. Longcope*, 288 Pa. 196; *Commonwealth v. Miller*, 313 Pa. 140; *Boock's Petition, supra; Commonwealth v. Herr*, 229 Pa. 132."

In Commonwealth ex rel. v. Macelwee et al., 294 Pa. 569, Mr. Justice Simpson said (p. 571):

" 'An act concerning townships,' is notice to all persons located therein and to every subordinate municipal division of the State located wholly or partially within them, that there may be, in the body of the act, something which affects his or its interests, and ordinarily this satisfies the constitutional requirements as to the title".

And in Poor District Case (No. 1), 329 Pa. 390, when passing on the question of whether the title of an act violated article III, section 3, of the Constitution, the Supreme Court stated (p. 401):

"It is enough if it give such notice of the contents of the act as to put the reader to further inquiry".

Upon referring to the title of the act in question we find that it not only states it is for the incorporation of banks of discount and deposit, but also the regulation of such banks. Numerous authorities hold that the word "regulate" includes or comprehends the words "control" or "govern". See 7 Words and Phrases (1st Ser.), pp. 6041, 6042, 6043-6046.

As has been stated in several decisions of the Supreme Court of our State, when reading the title of an act, "The Constitution presupposes a reasonably inquiring state of mind, and such a state of mind would follow the trail indicated by the main part of the titles, into the body of the acts." We are of the opinion that in reading the title of the Act of May 13, 1876, P. L. 161, a reasonably inquiring state of mind would follow the trail indicated by the main part of the title, to wit, "For the incorporation and regulation of banks of discount and deposit," and it seems quite obvious that the very mention of the word "incorporation", as relates to banks, would at once suggest the necessity for capitalization and a financial structure before a charter could be issued, and as a necessary incident to erecting such capital structure it follows that the act would set forth the extent of the liability of a shareholder. Adopting the language of the Supreme Court in In re Sugar Notch Borough, supra, a reader of the title "would be warned that the entire subject" of incorporating and regulating banks of discount and deposit might be included, which would of necessity have to provide for the issuance of capital stock for a working basis. Therefore, we are of the opinion that the title to said act does not offend article III, sec. 3, of the Constitution of Pennsylvania.

In Commonwealth ex rel. v. Snyder, 279 Pa. 234, Chief Justice Moschzisker said (p. 239) :

"When the constitutionality of an act of assembly is attacked, it is the duty of every judge,—without regard to his opinion as to the necessity for the statute, or its wisdom,—to seek a construction which will support the legislative interpretation of the Constitution, and an act can never properly be declared void unless this is found to be impossible."

In Poor District Case (No. 1), supra, it was said by Justice Drew (p. 399) :

"A statute is constitutional until it is shown to be otherwise. A presumption always favors it because the

General Assembly has jurisdiction of all subjects on which its legislation is not prohibited, for which reason the provisions of the Constitution should be liberally construed and in favor of constitutionality."

The provisions of the act in question were first made part of the laws of Pennsylvania by the Act of April 16, 1850, P. L. 477, and these provisions were reënacted by the Act of May 11, 1874, P. L. 135, and subsequently included in the Act of May 13, 1876, P. L. 161, which act is involved in the present controversy; and said act was further amended by the Act of May 3, 1909, P. L. 412.

Here we have legislation that has been on our statute books since 1850, making substantially the same provisions which the receiver of the said Snow Shoe Bank now seeks to enforce. And it has been the policy of the courts, where an act has been in operation for so long a period without objection on the ground of its alleged unconstitutionality, to uphold the same. As was said by Judge Trexler in Maginnis v. Schlottman, 76 Pa. Superior Ct. 124, 127:

"Where an act has been in operation for a long time without objection on the ground of its alleged unconstitutionality, courts will shrink even more than ordinarily from upholding such an objection to the same: Com. ex rel. Wolfe v. Butler, 99 Pa. 535; Sugar Notch Borough, 192 Pa. 349; Com. v. Gilligan, 195 Pa. 504; Kucker v. Sunlight Oil & G. Co., 230 Pa. 528; Kennedy Township Road, 50 Pa. Superior Ct. 619."

Defendant in his argument on the demurrer contends that said Act of May 13, 1876, is also unconstitutional because stockholders in other corporations authorized under the laws of the State of Pennsylvania are not liable to an additional assessment up to what amounts to double liability on the par value of their stock. It seems to us that this point has already been decided by the Supreme Court of Pennsylvania. As was said in Commonwealth ex rel. v. Middleton, 210 Pa. 582, 590:

"In Stegmaier v. Jones, 203 Pa. 47, and again in Com. ex rel. Miller v. Brown, 210 Pa. 29, attention was called to the fact that there is no constitutional requirement of uniformity in legislation as to matters included in section 7 of article III, of the constitution. That section prohibits local and special laws upon certain enumerated subjects and thereby requires that the legislation upon such subjects shall be general. Uniformity of provision or of result is not therefore in itself a requirement, but merely one of the tests judicially applied to determine the local, special or general character of the statute challenged. As said in Stegmaier v. Jones, supra, 'a law may by classification or otherwise produce some diversity of result and yet be general, for where the classification is based on genuine distinctions, its expediency is for legislative determination.' "

Furthermore, the appellate courts of our State have made a clear distinction between the liability imposed upon stockholders of banks of deposit and stockholders of trust companies. In DeHaven v. Pratt, 223 Pa. 633, Maxler v. Freeport Bank et al., 275 Pa. 510, and in Gordon, etc., v. Winneberger, 310 Pa. 362, it was decided that the shareholder in a bank of deposit chartered under the laws of Pennsylvania is subject to a double liability, and that the shareholder of a trust company organized under the laws of Pennsylvania is not.

Lastly, defendant contends that the Act of May 13, 1876, P. L. 161, was repealed by the Banking Code of May 15, 1933, P. L. 624, art. XVI, sec. 1602.

Any liabilities of the bank existing on June 10, 1931, when its affairs were taken in charge by the Secretary of Banking, and which could not be liquidated by the assets then owned by the bank, would have to be met, to the extent of such an amount as could be realized, by levying an assessment on shareholders up to 100 percent of the par value of their shares. Therefore, any liability which legally may have attached to defendant, as a shareholder, was fixed as of June 10, 1931, when said bank was closed

and its affairs were taken over by the Secretary of Banking; and an act of the legislature passed subsequent to that time could not lawfully release a shareholder from liability which had attached prior to the passage of such an act. On this question, section 614 of the Banking Code of 1933, supra, as amended by the Act of April 24, 1935, P. L. 56, expressly declares that as to any claims outstanding against a bank, upon the effective date of said act, the liability of "common shareholders" shall be as theretofore provided by law until terminated in accordance with the provisions of said section of the act. Thus we find that the legislature intended that the liability of a shareholder which had previously attached was not to be canceled by the passage of said act.

The Department of Banking Code of May 15, 1933, P. L. 565, art. VII, sec. 723, provides, inter alia, that if at any time after the Secretary of Banking takes possession of a corporation as receiver it shall appear to the Secretary that the assets will be insufficient to pay in full the bank's debts, depositors, and other creditors, he shall assess against shareholders in said bank the amount which the secretary deems necessary for the payment of such debts, not to exceed the maximum liability of such shareholder as provided by law. And if any shareholder shall not pay the amount assessed against him, the Secretary of Banking may institute an action at law or in equity against him to recover the amount of such assessments.

For the reasons above set forth we are of the opinion that the affidavit of defense in lieu of demurrer should be dismissed.

### Order

And now, to wit, August 22, 1939, defendant's affidavit of defense raising questions of law in lieu of demurrer is hereby dismissed and defendant is given leave to file a supplemental affidavit of defense to the averments of fact contained in plaintiff's statement, within 15 days from the filing of this order.